## GRIMES' ESTATE v. NORRIS.

The will of a testator, dying before the organization of the State government, did not require to be probated under the then existing laws.

Our Statute of Wills not only fails to require the probate of wills executed before its passage, but it must, from its terms, be concluded that the Legislature actually intended to exclude such wills from the operation of the statute altogether, leaving their validity to depend upon the laws under which they were made, and not disturbing rights which had grown up under the former system.

A will only becomes executed upon the death of the testator, and therefore this construction does not affect wills made before the passage of the statute, where the testator did not die till after its passage.

The Probate Court is an inferior Court, and therefore cannot take jurisdiction or administer remedies other than those given in, and in the manner prescribed by, the statute.

APPEAL from the Probate Court of San Francisco County.

This appeal is prosecuted from an order of the Probate Court of San Francisco, revoking the probate of a will. Eliab Grimes, a naturalized citizen of Mexico, died in Yerba Buena on the 7th of November, 1848. On the 23d of August, 1851, Hiram Grimes, his nephew, presented to the County Court of San Francisco certain documents, purporting to be the will of the deceased, and two codicils thereto, which were admitted to probate on the 12th of September, 1851.

In 1852, the heirs of Eliab Grimes came in and applied to have the order of the 12th of September, 1851, vacated, on various grounds, set forth in their petition.

The application was opposed by Samuel Norris, the grantee of Hiram Grimes, the devisee in the will. The Court below entered a final order revoking the probate of the will and the letters testamentary, and setting aside the will as fraudulent. Norris appealed.

*Baldwin & Haggin* for Appellant.

The Probate Court of San Francisco had no jurisdiction of the will and codicil, made and taking effect previous to the passage of the Act of 1850, and the adoption of the Constitution.

We presume it will be conceded that the Probate Court is a Court of limited jurisdiction, having only such powers as are especially given, to be exercised in the modes prescribed. The statutes give them all the substantive powers they have ; and, unless these give them jurisdiction of a will made under an entirely different system, they have none. The statutes not only have not given any such power, but every provision evidently looks to, and provides for, only wills made after the passage of the Act. The only statutes bearing upon the subject of wills are to be found in the Comp. L., pp. 140–2, and 337–81. Every clause of these Acts so evidently refers to wills, executed after their passage, that we need do no more than call attention to them.

Nor is this a mere *casus omissus* in the Legislature. It recognized the rule that the laws of the former system were in force, and provided for the settlement of all matters happening under it. It was not thought necessary, nor would it perhaps have been just or politic to have subjected wills, which had been made, and had their effect under an entirely different system, to new rules and tests, and litigation. There was no reason or sense in it. The will was either good under the old system, or bad ; if good for its purposes, it needed no further probate ; if not good, it would not be affected by any other or further proceedings.

But if the Legislature had intended to bring these instruments within the power of the Probate Courts, it would have adopted appropriate rules. The fact that it provided in the recording Acts, for the recordation of deeds made before the passage of the Act, shows that, if its intention had been to require the probate of wills made before the passage, some express provision to that effect would also have been made.

This will stood on the same footing as a deed of conveyance ; it had

the effect of one; rights had vested under it as under a deed, and it was no more in the power of the Court of Probate to divest these rights, by declaring the will invalid, than it would have been in its power to declare a deed of bargain and sale invalid. Castro *et al v.* Castro, April, 1856.

This being so, it is not seen how, by a proceeding in the Probate Court, this vested interest could be divested, or, if the will were void, how validity could be imparted to it, by the action of this Court of limited and inferior jurisdiction. Panaud *v.* Jones, 1 Cal. R., 488; Clarke *v.* Perry, Jan. T., 1855.

The true rule is, that statutes, whether affecting rights or remedies, either in civil or criminal cases, shall never be construed to operate upon rights, subjects or liabilities, in existence at the time of their passage, but only as to future cases or subjects, unless the law expressly so declares.

This principle has been established from the earliest times, and has been consistently pursued ever since. It has become a maxim. *Nova constitutio futuris formam imponere debet non preteritis.* For a full and able exposition of this maxim see "Broom's Legal Maxims," marginal p. 28. This author says, such decisions as extend remedial statutes, even to inchoate transactions, have turned upon the words of the Act compelling the Courts to give them such construction, and cites Hitchcock *v.* Way, 6 Adol & Ellis, p. 249, Am. ed. Eng. Com. Law Reports; 9 Bacon's Abridg., 220; 2 Inst., 292.

Blackstone lays it down as a fixed principle, that all laws are to operate *in futuro,* and not retrospectively. 1 Com., 46. The principle, says he, is as applicable to civil as to criminal proceedings. 4 Burr., 2460; 2 Shower, 17; 2 Mod., 310; 1 Ventr., 330; Ogden *v.* Blackledge, 2 Cranch, 272; Wilkenson *v.* Myer, 2 Lord Raymond, 1352; see also Calder *v.* Ball, 3 Dallas, 386; 7 Johns., 500, Dash *v.* Van Cleek; Prince *v.* United States, 2 Gallis, 204; 1 La. R., 352; Thames Manf. Co. *v.* Lathrop, 7 Conn., 550; 2 Dwarr. on Statutes, 680–1.

Statutes can never be applied retrospectively by mere construction. Jarvis *v.* Jarvis, 3 Edw. R., 462; Whitman *v.* Hapgood, 10 Mass., 437; Medford *v.* Leonard, 16 Mass., 215; 9 Bacon Abridg., 222. See also, Gilman *v.* Shoster's Executors, 2 Mod., 310; Coach *v.* Jeffries, 4 Burrows, 2460; Churchill *v.* Crease, 2 Moore & Payne, 415; 5 Bingham, 177; Terryton *v.* Hayman, 3 Moore & Payne, 137; 5 Bing., 489; Bedford *v.* Shilling, 4 Serg. & R., 401; Duffield *v.* Smith, 3 ib., 590, 598; Osborne *v.* Hager, 1 Bay, 179. See Butler *v.* Palmer, 1 Hill, 225; Quackenbush *v.* Danks, 1 Denio, 128; Hastings *v.* Lane, 3 Shepley, 134; Gerard *v.* Rouan, 2 Scammon, 499; Gossett *v.* Rowe, 1 Scammond; Hooker *v.* Hooker, 10 S. & M., 599; Bruce *v.* Schuyler, 4 Gil., 221.

Indeed, it might be argued that the Legislature had no constitutional power to take from this will, already proven under the old system, and having the full force of a contract, vesting an estate, its effect as evi-

dence, by requiring proof, by way of probate, before it could be used as such evidence.

It is a right which is secured by the Constitution, which protects the evidence of a contract, as perfectly as it does the contract itself. 3 Story on Cont., § 1579, 1393; 1 Scammon, 335; Fletcher v. Peck, 2 Peters' Cond. R., 311, et seq.; Van Rensellaer v. Livingston, 12 Wend., 491.

And so it has been held, that, independently of constitutional provisions, every party to a contract has a vested right in the evidence of it. And, accordingly, Acts requiring particular evidence to sustain certain contracts, have never been construed so as to defeat contracts made before the passage of the statute, and proved according to the law as it existed at the time they were entered into. Bacon's Abridg., title Statute, letter C; 11 Wend., 490; Williams v. Pritchard, 4 T. R., 2; 10 Mass., 437.

*Howard & Goold* for Respondents.

The Probate Court certainly had jurisdiction in the premises. No law restricts it to wills made since 1850.

Any Californian who, having made his will prior to 1850, subsequently dies, is cut off from the power of disposing of his property by the theory of the other side.

If the Probate Court cannot enforce the will, it is virtually null. The thing is not a will until declared so by the proper authority. That foreign wills must conform to our laws makes no difference. The laws of Mexico in force in California when we acquired it are not, in legal contemplation, foreign laws, nor are wills then made, foreign wills. If a will were good by Mexican law, it is entitled to probate now, even if it contravene every provision of our statutes, for all rights acquired before the cession, if they can be, must be upheld and protected.

In Panaud v. Jones, in the Peralta case, and in the Castro case, this Court rendered final judgment on appeal from Probate Courts, a circumstance which should have admonished the appellant not to make this point, even if there ever was anything in it.

Mr. Chief Justice MURRAY, after stating the facts, delivered the opinion of the Court. Mr. Justice HEYDENFELDT and Mr. Justice TERRY concurred.

It will be unnecessary, for the purposes of this decision, to pass upon many of the arguments so ably adduced by the respondents, in favor of the judgment below, as we are satisfied that the case must go off on a preliminary point of jurisdiction, leaving the parties to their remedy at law or in equity, as the case may be, on its final merits.

It will be observed that the will became executed by the death of the testator, in 1848, prior to the passage of the Statute of Wills, or the adoption of the State Constitution. Not only does the statute fail to require wills, executed before its passage, to be probated, but, on examination of the different sections of it, we are forced to the conclusion that

this was not a *casus omissus*, and that the Legislature actually intended to exclude them from the operation of the statute altogether, leaving their validity to rest upon the laws under which they were made.

When we reflect that the laws of California did not require a will to be probated, and that numerous rights had grown up under this system, it cannot be supposed, in the absence of some provisions to that effect, that the Legislature intended to unsettle these rights or open them afresh.

It is said that, if a resident of California had made a will prior to 1850, and died subsequent to that time, he would be deprived of his right to dispose of his property by devise, under this construction. The answer to this is, that the will is not executed, or does not take effect, until the death of the testator, and this same answer will apply with equal force to several of the respondents' arguments. The Probate Court is an inferior Court, and therefore cannot take jurisdiction or administer remedies, other than those given, and in the manner provided by the statute.

The law in this case contains no words which would justify us in giving it a retrospect beyond its passage; and it is well settled that, in the absence of express words to that effect, a law can only operate upon future, and not upon passed transactions. If the Legislature had intended that these instruments should be probated, it would doubtless have adopted some rules upon the subject, as it did in the case of deeds and conveyances made before the passage of the Recording Act. It was doubtless deemed unwise to subject them to a new test or scrutiny, and they were left to stand or fall, according to their validity. In fact, by the decision of this Court, in the case of Castro *et. al. v.* Castro, April Term, 1856, it was determined that a will rested upon the same basis as a conveyance, and operated as a deed, unless in case of some express statute requiring it to be probated, and that such a proceeding as the probate of a will was unknown in California.

From the foregoing, it results that the Probate Court had no jurisdiction, that its judgment is a nullity and must be reversed.