## INGOLDSBY v. JUAN et al.

A deed properly executed and acknowledged by the wife, of her separate property, with the assent of her husband underwritten, not under seal, but properly acknowledged, is sufficient to pass the title.

Lands acquired by a married woman, under the Mexican laws, and which were her separate estate, might be conveyed, before the adoption of our statute, with the bare assent of the husband, by any informal instrument, or, possibly, without writing. By our Constitution, property thus acquired is the separate estate of the wife ; she does not, therefore, look to our statute respecting conveyances, as the source of her authority to sell or dispose of her property. On the contrary, the statutes are a limitation upon the power—prescribing a new and distinct mode of conveying the land or evidencing the sale or disposition of it. It disables her from disposing of her property as she could before have done. So far as the disability is clearly evidenced, the restraint exists ; but it goes no further to restrain her than this manifest intent. She retains all her original rights and powers over the subject, except such as are expressly taken away.

In such case, the joining of the husband in the conveyance is not for the purpose of passing title, for he has none to convey. It is only as a precaution against imposition, or to afford her his protection, or similar reasons of policy, or to evidence his renunciation of the right to manage or control it.

A deed which recites the title of the wife, and then declares that the husband unites in the conveyance, in pursuance of the statute, is sufficient.

Literal conformity with the statute concerning conveyances of the separate property of the wife, as a general rule, is not required. A substantial compliance is all that is necessary.

It is a familiar rule, recognized by this and all other Courts, that where several papers, concerning the same subject matter, are executed by or between the same parties at the same time, all are to be construed together as one instrument.

There is no peculiar form for the signing of a deed. Any writing which clearly shows that a party has adopted a sealed instrument as his own, intended to be bound by the contents of it, is, if not a formal, at least a sufficient execution to satisfy the statute.

The sixth section of the Act concerning Husband and Wife, relates only to separate property acquired after the passage of the Act. No retrospective operation was intended, or, perhaps, could have been given to it. In such cases the statute only operates upon future transactions and matters.

A County Clerk may take and certify an acknowledgement to a deed, although he has no seal of office. This general phrase, " having a seal," was only intended to denote a Court of Record, which is defined to be a Court having a seal. The power of the Clerk was never intended to be made to depend upon the fact of his having procured this article, or the care with which he preserved it.

APPEAL from the Seventh District, County of Contra Costa.

This was an action of ejectment. The facts are stated in the opinion of the Court, but will, probably, be better understood by setting forth the amended answer of the defendants, which presents the question upon which the opinion of the Court is based. It is as follows :

" That all the right, title or interest which Martina Castro ever had in any part of the demanded premises, was held by her before her marriage with Lewis Depeaux, in 1849, and before the adoption of the Constitution of this State, and, that the same was her separate property ; that she, in August, A. D. 1850, with the knowledge, consent and concurrence of her husband, made a deed to her children, for a valuable consideration, purporting to convey to them eight-ninths of the demanded premises, which conveyed an equitable title, and converted her into a trustee for their use and benefit ; that all the rights which the children took under that deed, had, by divers conveyances, vested in the defendants ; that the children entered into possession of the property, after the execution of the aforesaid deed, with the consent of the aforesaid Martina and her husband ; and that they and defendants had made improvements to the amount of $18,700, which were now on the premises demanded ; that plaintiff and his co-tenant and grantor subsequently purchased the demanded premises of the said Martina Castro and her husband, with reference to her said deed to her children, and with full and actual notice thereof, and that the price paid by them was about one-half of the ninth part of the demanded premises, which she, in said deed to her children, reserved to herself; and that they purchased with full and actual notice of the rights of the defendants—of their possession and of the value of their improvements ; and defendants deny any interference with the said Martina or plaintiff, in the enjoyment of the remaining one-ninth part of the land sought to be recovered." This answer was sworn to.

Plaintiff moved to strike out the amended answer upon the following grounds :

1st. Because the same was irrelevant.

2d. Because the same set up a sham defense.

The Court ruled that the amendment should be stricken out, unless defendants should elect to rely on such amendment to the exclusion of

the original answer; and defendants refusing so to elect, the amendment was stricken out, and defendants excepted.

*R. F. Peckham* for Appellant.

The first question presented in this connection is, whether the Act of April 17th, 1850, applies to property acquired before its passage. That it was not the intention of the Legislature that the Act should be so applied, appears from the fifteenth section thereof, which reads : " The rights of husband and wife, married in this State prior to the passage of this Act, or married out of this State, but who shall reside and acquire property herein, shall also be determined by the provisions of this Act, with respect to such property as shall be *hereafter acquired*." (Woods' Dig., art. 2616, sec. 15.)   Martina Castro and her husband were married prior to the passage of the Act, and the property was previously acquired.   If it was the understanding of the Legislature, that the provisions of the Act were to govern parties before then married in relation to all their property, there was no necessity of section 15 applying them to such persons as to property thereafter acquired ; the maxim, *expresio, unius, exclusio, ultirius est*, must be applied, and the conclusion is obvious, that the Act under consideration has no application to property held by a woman married in this State before its passage.   But, discarding the provisions of section 15, and the position that the Act would then have no application to parties married before its passage as to property before then acquired, would be fully sustained by the case of Sawyer *v.* Plumb, 21 Conn. Reports.

We are to contemplate the *feme covert*, before the passage of this Act, with reference to the laws then in force, and the rights and capacities which she enjoyed under them, and which were fixed, guaranteed, and protected by the Constitution, and ask whether they have been divested or abridged by the Act in question?   In examining the question, we are to regard the wife as clothed with a separate legal existence so far as her separate property is concerned: in this we are supported by authority.   Edrington *v.* Mayfield, 5 Texas; Wood *v.* Wheeler, 7 Texas; Holmes *v.* Holmes, 4 Barbour; Harney *v.* Hill, 7 Texas, 591.

In Mitchell *v.* Tucker, (10 Mis. 260) Scott, Justice, delivering the

opinion of the Court, says: "By the Spanish law, which prevailed here prior to the introduction of the common law, lands might have been aliened by parol; this is settled. So in the civil laws, which is the foundation of the Spanish system of laws, no verbal solemnities were required to give validity to a contract; all that was required was the *apprehension and consent* of each party, expressed in any form of words."

Thus stood the law, and her power and rights in regard to the alienation of her property, until the adoption of the Constitution, which declares the rights of husband and wife, (see Woods' Dig. p. 36, sec. 14) which was adopted from the Constitution of Texas. This clause placed husband and wife upon terms of equality, so far as their separate property is concerned. See the remarks of this Court in Selover *v.* The Russian American Co., January Term, A. D. 1857, in connection with the following cases from the Supreme Court of Texas: Edrington *v.* Mayfield, 5 Texas, 363; McRay *v.* Treadwell, 8 Texas, 176; Womack *v.* Womack, 8 Texas, 397.

Under this Constitution, and the laws then in force, she was vested with as full, perfect and absolute title to her separate property, as the husband possessed in reference to his, and the right of alienation was an inseparable incident to such ownership. She could sell and dispose of the same as she pleased, without the interference of her husband. American Home Society *v.* Wadhams, 10 Barb. 597; 2 Story Eq., sec. 1390, Roper, 177, 198; Vanderhayden *v.* Mallory, 1 Comst. 452.

We hold that this right, and power of alienation, could not be abridged or divested by any subsequent legislative enactment, and that all laws requiring her husband to join with her in the deed, to enable her to alienate her separate estate, are abridgments of her vested rights in the property under the Constitution, and are null and void; and in support of our position upon this point, offer to the Court for consideration the following authorities: Wilkinson *v.* Leland, 2 Pet. 627; Wilson *v.* The State of New Jersey, 5 Cranch. 164; Vestervelt *v.* Gregg, 2 Kernan, 202; Commercial Bank of Natchez *v.* Chambers *et al,* 8 S. & M.

But it is not upon the ground alone that the Act divests vested rights, that appellants contend that it is unconstitutional; but also

upon the grounds that it impairs the obligations of the married con-
tract. We have seen that by the law of the marriage in 1849, Mar-
tina Castro could convey without his joining with her in the deed; and
this law was a contract on his part, that she should enjoy and exercise
that privilege. Smith v. Smith, 1 Texas, 621; Holmes v. Holmes,
4 Barb. 295; Edrington v. Mayfield, 5 Texas; Womack v. Womack,
8 Texas, 397; Hooper v. Smith, 23 Ala. R.; Woods v. Wheeler, 7
Texas, 13; Selover v. The Russian Co., Cal. Rep.

The principles laid down in these cases show conclusively that the
deed in question was valid, and binding upon Martina Castro, notwith-
standing the Act of April 16th, A. D. 1850, without the signature of
the husband, or her private acknowledgment.

But we insist, that if her separate acknowledgment was necessary to
pass her title, that the acknowledgment by her on the day of execu-
tion of the deed, taken and certified by Peter Tracy, Clerk of the
County Court, and the certificate thereof, were in all things sufficient
to entitle the deed to be read in evidence; he was Clerk of a Court
having a seal, within the meaning of section fourth of the same Act.
(Wood's Digest, art. 341.) The law required that the County Court
should have a seal. (Session Laws of 1850, p. 218, sec. 14.) And
though no official seal had in fact been provided for that Court, yet it
would be too narrow a construction to hold that its officers could not
perform their assigned functions until an official seal should be in fact
procured. On the contrary, the same section provides, that until the
official seal be provided, the private seal of the Clerk may be used
instead of a seal of the Court; and in Kentucky, where no such pro-
vision was made for the use of a private seal, it was decided that the
seal generally used by the Clerk, though a private seal, must be pre-
sumed to have been adopted as the seal of the Court. Collins v.
Boyd, 5 Dana, 316.

*Gregory Yale* for Appellants.

In addition to what is stated in Mr. Peckham's brief, respecting the
sufficiency of the conveyance from Depeaux and wife to the defend-
ants, we wish to repeat what was stated by counsel in the oral argu-
ment in this Court, that there is an important distinction in the terms

Ingoldsby *v.* Juan.

used in the "Act concerning conveyances," passed April 16th, 1850, and the "Act defining the rights of husband and wife," passed April 17th, 1850, so far as relates to the *form* of the conveyance.

This inquiry is pertinent, in view of the objection made to the introduction of the deed of Martina Castro to her children, in which her husband, Lewis Depeaux, joined, upon the ground that the acquiescence of Depeaux was not under seal.

By the Act of the sixteenth of April, 1850, sec. 1, " conveyances of lands, or any estate or interest therein, *may be made by deed,* signed by the person by whom the estate or interest is intended to pass, being of lawful age, or by his lawful agent or attorney, and acknowledged, or proved, and recorded," as therein directed, construing " may " as meaning " shall," this provision signifies, generally, that conveyances of real estate made under that Act, must be by *deed.* This mode of conveyance necessarily imports a sealed instrument.

By section 19th, " a married woman may convey any of *her real estate by any conveyance thereof*, executed and acknowledged by herself and her husband, and certified in the manner hereinafter provided by the proper officer taking the acknowledgment."

She may convey " *by any conveyance.*" The term is here used as the *instrument* by which the *contract* of conveyance is consummated. " Conveyance," as an instrument, does not necessarily, as the term " deed," import a *sealed* instrument.

But under the operation of the Act of the seventeenth of April, " defining the rights of husband and wife," the rights of a married woman, as respects her separate estate, are fixed and defined. By section six, " the husband shall have the management and control of the separate property of the wife, during the continuance of the marriage, but no *sale* or other alienation of any part of such property can be made, nor any lien or incumbrance created thereon, *unless by an instrument in writing,* signed by the husband and wife," etc. Here, in this special Act, relating to husband and wife, the terms " deed " and " conveyance " are not used, when speaking of the " sale " of the separate property of the wife. A " *sale*" cannot be made, " unless by an instrument in writing." An " instrument in writing " does not import a *deed,* duly signed and sealed. It may be of such a char-

36

acter, but not necessarily.    2 Tomlin., 210, title "Instrument."    It is the evidence of an agreement, when reduced to writing.    It is the form of the agreement, and may be valid, and the agreement void on account of fraud.    1 Bouvier, 703, *Ib.*

The conveyance by Depeaux and wife to the defendants in August, 1850, or the conveyance by the wife, in which he acquiesced in the form stated in the record, is to be controlled by this Act.    This is the sense in which these two Acts have been regarded by this Court, so far as the negative words used in the latter are interpreted to be a prohibition against any other mode of conveyance.    Selover *v.* The American R. Co., April Term, 1858.

A "sale," therefore, by the husband and wife, of the separate estate of the wife, can be made by "an instrument in writing," acknowledged as the Act requires, and need not be made by "deed" *under seal,* as contended in the objections made to the introduction of the title under which the children claimed.

She, however, uses a seal, and one seal is good for twenty grantors to a deed.    (Bohannons *v.* Lewis, 3 Monroe, 877, citing Shepherd's Touchstone, 55.)    The same doctrine is extended to *scrowls,* in the United States.    *Ib.*

*John Wilson* for Respondent.

As to the first point made by Mr. Peckham, that our Statute concerning Conveyances does not apply to property held before the Act, was only intended to regulate the transfer of such as should be obtained after the passage of the Act.

There is no exception in the Act itself, and there is no reason why there should be; and there are no authorities which authorize such a construction of the Act, and if there were, such a construction as he contends for would certainly lead to great confusion, and its practical results would be absurd; and under it the Act in many cases would not take effect for more than half a century after its passage, as to some property, and as to other property owned by the *same individual* it would take effect immediately upon its passage.    The Legislature certainly intended no such absurdity.    The fourteenth section of the eleventh article of our Constitution provides, that the Legislature shall

Ingoldsby v. Juan.

have power to prescribe the mode in which married women may dispose of their separate property, and the Legislature has done so; and it seems to me that there is no necessity for further argument upon this point.    The case of Selover v. The American Russian Co., decided by this Court at the January Term, 1857, seems to settle this whole question.

Mr. Peckham insists that married women could convey by *parol*, and without the assistance and authorization of their husbands.    I believe this Court has held that conveyances could *not* be made by *parol;* and the proposition is as old as the civil law itself, that a wife must either have the authorization of her husband, or a decree of a Judge, before she could convey any of her rights, or make any contract under the civil law.

I come, then, to the proposition of the defendants, to give in evidence the supposed deed from Martina Castro.    I maintain that it was rightly rejected, and refer to the second section of the Act of sixteenth April, 1850, concerning conveyances, which in so many words requires a wife's property to be passed by *joint deed*.    The same Act requires all conveyances to be by deed, and by the sixth section of the Act of seventeeth April, 1850, no sale or other alienation of the wife's property can be made unless by an instrument of writing signed by the husband and wife.

Now, while she held the separate property in the ranch, as the paper on its face shows she did, still her husband had the entire control of, and was entitled to receive the whole rents and profits, and had an equal interest with her in all the improvements put upon it during the marriage, and his heirs after him would have inherited all he was entitled to therein at the time of his death.    Therefore he had a large interest that could not pass unless by his deed.    The paper shows no pretence that his interest was conveyed, and in his endorsement there are no words of conveyance, and if there was, then there was no seal, and without doubt he cannot convey his interest unless by deed.

Then the deed must be a joint one, or the instrument in writing must be signed by both, and therefore in no fair construction that can be put upon the statutes, can it be called a joint deed or instrument of

writing signed by them both. The statute must mean that both shall be bound by the covenants therein—both must jointly convey all their interest in the subject matter of the conveyance.

1 Metcalf, Rep. 542, Bruce v. Wood; 9 Ham. Rep. (Ohio) 121; 9 Mass. R. 218; 13 Mass. R. 223, Lumpkin v. Austin; 7 Blackf. R. 410, Cox v. Wells; 7 Blackf. R. 66.

In 1 Martin, N. S. R. 611, *held*, that separate deeds did not transfer the wife's estate. The law there is exactly the same as ours.

In Cal. Rep. January Term, 1856, Helen Pool v. F. Gerard, this Court decided the same as to the sale of a homestead, which stands on the same footing as to this point.

Selover v. The American Russian Co.; Sempers & Cranmer v. E. Sloan, Oct. Term, 1856, and late cases of Another v. Tewksbury, all seem to me to settle this point. Turnbull v. Cerba, 1 Martin, N. S.

In 12 Robinson's R. 82, the Court held that where the husband authorized the wife to sell, she could not take back a mortgage for part of the purchase money.

In 1 Martin Rep. (O. S.) 294, the Court enters fully into the discussion of the power of married women to contract under the civil and Spanish law, and held that every condition must be strictly complied with.

See to same point, 19 Howard Rep. (U. S.) 148, Megan v. Boyle; 3 Louisiana R. (O. S.) 581, Boucier v. Launse; 3 Louisiana R. (O. S.) 84, Draugent v. Prudomme; 4 Barb. ch. R. 296, Holmes v. Holmes; 4 Harris, (Penn.) R. 484, Trainer v. Hagg. These are ample authorities, as I suppose, to satisfy this Court that nothing passed by this paper upon its face.

I deny that Tracy had any authority to take the acknowledgment of this paper as County Clerk. Our statute only authorized a Clerk of a " Court having a seal." It is true he was *ex officio* Clerk of the District, County, Probate and Court of Sessions, and yet some of them had no seal at the date of this paper, or now and then of necessity, he must state in what capacity he took it, that the Court might see and inspect the seal he used, to see if it was the correct one. The County Clerk had no seal; he says he uses his private seal.

Proving the handwriting cannot help the case, because a married

woman can only convey as pointed out by the statute.    See case of Another v. Tewksbury, lately decided.

In 1 Peters (U. S.) Rep. 328, Elliott v. Pearsal, it was decided you cannot even show by parol proof that the wife was duly examined — the certificate must state that, and its defeat in form cannot be healed by parol or other proof.

In 3 La. Rep. 74, it is said that those who rely upon married woman's deed, must show everything was done as the law requires. 7 B. Monroe, 255, 4th and 5th sections of Act 1850, page 249. Therefore this deed is also void for want of acknowledgment in accordance with the requirements of the statute.

BALDWIN, J., delivered the opinion of the Court—TERRY, C. J., concurring.

This action of ejectment was brought to recover a tract of land, lying in Santa Cruz county, being part of the Soquel Ranch.    The plaintiff claims, under a deed, made by one Martina Castro to plaintiff, and one Labaria, dated January 22, 1855, and a deed from Labaria, on the tenth of September, 1855, to plaintiff.

The record shows that the grantor claimed to be entitled to the premises in dispute, by virture of a grant from Figueroa, the Governor of the late territory of California.    It shows, also, that the defendants were in possession, claiming by virtue of a deed, made by the same Martina Castro (or Depeaux) on the twenty-ninth of August, 1850. At this time she was the wife of one Lewis Depeaux; but she had been, before her marriage, with Dupeaux, the wife of one Michael Lodge, who died previous to her inter-marriage with Depeaux. · The grant to her by Figueroa was made while she was the wife of Lodge.

Many interesting questions are raised by the counsel, and they have been argued with learning and ability.    We do not consider it essential to the disposition of this case upon its merits to pass upon them all· The main question which, we think, disposes of the question of title, rests upon the validity of the deed set up by the defendants in bar of the plaintiff's action.    This deed purports to be a deed of bargain and sale, executed by Martina Castro to her children, eight in number, conveying to each one an individual ninth part of the ranch.    This deed

was signed and sealed by her, in the presence of T. R. Perlee and Peter Tracy, as subscribing witnesses. The deed was acknowledged, in proper form, before Peter Tracy, County Clerk of Santa Clara county, on the day of its date. The husband, Dupeaux, did not sign the deed in the body or at the foot of it, as usual in such cases ; but at the bottom of the deed, and after the certificate of acknowledgment, these words were added : " I have read the foregoing, and fully agree with the conveyance made by my wife ; Lewis Depeaux "—witnessed by the same persons as the deed. Then follows the certificate of acknowledgment by Depeaux before the same officer, that he executed the foregoing instrument freely and voluntarily, and for the uses and purposes therein expressed.

All this was contemporaneous with, and a part of the execution of the original deed.

The deed being the predicate of the title of the defendants was ruled out, because, under the statute of 1850, it did not convey the title of the grantor, Martina, in the premises. If this pretension could be maintained, probably no case could be found in which technical law so far prevailed over natural justice. The grant was made to Mrs. Castro for the benefit of her family. She sought unquestionably to carry out the true intent of the grant by securing to her children a portion of its benefits. The deed she afterwards executed to the plaintiff's predecessor, evidently by the terms of it (whatever its strict technical meaning) was only designed to convey the interest remaining in her after the deed to the children. But it is charged that, by force of some general words after a particular description of the part intended to be conveyed, the whole tract passed, the deed to the children being inoperative, because, though the husband, Depeaux, assented to the deed, yet he was not, *stricti juris*, a joint grantor with her.

We assume for the argument, and that only, that this property was the separate estate of of Mrs. Castro, and that a separate estate vested before the passage of that Act defining the rights of husband and wife.

By the fourteenth section of the eleventh article of the Constitution, " all property, both real and personal of the wife, owned or claimed by her before marriage, and that acquired afterwards by gift, devise

or descent, shall be her separate property." The sixth section of the Act "defining the rights of husband and wife," passed April 17th, 1850, provides that the husband shall have the management and control of the separate property of the wife during the continuance of the marriage; but no sale or other alienation of any part of such property can be made, nor any lien or incumbrance created thereon, unless by an instrument in writing, signed by the husband and wife, and acknowledged by her upon an examination separate and apart from her husband, before certain officers—the County Clerk not being one.

The Act of April 16, 1850, (Wood's Dig. 100) section two, provides that a husband and wife may, by their joint deed, convey the real estate of the wife in like manner as she might do by her separate deed if she were unmarried. Section three declares, that proof of acknowledgment of every deed of land may be taken by some Judge or Clerk of a Court having a seal. Section twenty—a married woman may convey any of her real estate by any conveyance thereof, executed and acknowledged by herself and her husband, and certified in the manner hereinafter provided, by the proper officer taking the acknowledgment.

Taking these Acts together, we think it cannot be contended that it was the intention of the Legislature to restrict the making of a contract respecting land by the wife to a formal deed. We do not consider these statutes as enabling Acts. They probably would be so if the common law operated upon the relations or marital contracts of the parties at the time of the contract. But, by the Mexican law and by the Constitution, the property was a separate estate in the wife. She could, before the statute, dispose of it, with the bare assent of the husband, as she chose, by any informal instrument, or, possibly, without any writing. The wife does not, therefore, look to the statutes as the source of her authority to sell or dispose of her property. On the contrary, the statutes are a limitation upon the power—prescribing a new and distinct mode of conveying the land or evidencing the sale or disposition of it. It disables her from disposing of her property as she could before have done. So far as the disability is clearly evidenced, the restraint exists; but it goes no further to restrain her than this manifest intent. She, of course, retains all her original rights

and powers over the subject, except such as are expressly taken away. The law neither presumes nor favors restraints upon alienations of property or upon contracts. One of the attributes of property is the power to sell and dispose of it. By the general law the sale may be absolute or conditional, partial or complete ; and the contract executory or executed. It may be evidenced in various forms ; as, by mere memoranda in writing, or deed under seal, by agreement for a title, or mortgage, or on conditions precedent or subsequent.

It has been seen, that the Act of April 17th, uses the term "instrument" in writing. The Act of April 16th, in the twentieth section, the word "conveyance." By section thirty-six of the Act concerning conveyances (the Act of April 16th, Wood's Dig., p 104) "the term 'conveyance,' as used in this Act, shall be construed to embrace every instrument in writing by which any real estate, *or interest in real estate,* is created, alienated, mortgaged or assigned, except mills," etc.

It is argued, that the words "may convey," especially in connection with the sixth section of the Act of April 16, which is prohibitory of any mode except that given, are to be construed as authorizing only a conveyance as therein provided ; that is, that in order to make the deed of the wife effectual, the husband must join in the deed. It will be observed, that the estate is confessedly in the wife ; *her* title it is that is to pass ; the joining of the husband is not for the purpose of passing title. It is only as a precaution against imposition, or to afford her his protection, or similar reasons of policy, or to evidence his renunciation of the right to manage or control it. [In this case, the contract having been made, and the right of the wife having vested under a different system, it is, to say the least, doubtful whether the Legislature could give the husband any power to control or manage such separate property, and more than, if he had it under the old system, the Legislature could take it away.]

The deed was formerly executed by the wife and acknowledged. She signed and sealed it ; but for the coverture it would have passed her estate. But the husband, it is argued, did not seal it, and was no party to the deed. But after the deed was signed and sealed, the husband did sign, at the foot of it, an express approval and adoption of it. In terms he agreed to the conveyance. It is true this agreement

was not under seal.   The agreement did not convey any title, for he had none to convey.   If he had signed and sealed the deed as an express party named in the premises thereof, the result would have been the same.   All that his formal execution of the deed could have done, would have been a signification of his assent and agreement. Having no estate in the land, unquestionably the law would not require of him the vain act of pretending to convey title.   It would have been enough if the deed had recited the title of the wife, and then declared that the husband united in the deed in pursuance of the statute.   We know of no rule which requires a construction of this statute differ- ent from other Acts of the Legislature.   Literal conformity is not, as a general rule, required.   A substantial compliance is all that is neces- sary.   When the end is answered, the mere mode is not usually of the substance of the Act.   No prohibitory words are used in the clause (section nineteen) we are now construing.   The language is, that a married woman *may* convey any of her real estate by *any conveyance* executed and acknowledged by herself and her husband.   Prohibitory words are not used in the twenty-second section, as to the mode and fact of acknowledgment.   The question now arises, what *is* a convey- ance ?   We know of no authority which holds that a conveyance of interest in land must necessarily be under seal ; and, if it were so at common law, it does not follow that it is so required by our statute.   On the contrary, the definition given by the thirty-sixth section, quoted before, shows that such was not the intention, for the language is, " every instrument by which an interest in land is created" is a con- veyance ; and we all know, that " an interest in land" may be created in writing not under seal.   The question is not—as we shall presently more fully explain—whether a paper unsealed passes the fee or strict legal title, but whether any right in or to the estate can pass without a seal.

It is a familiar rule, recognized by this and all other Courts, that where several papers, concerning the same subject matter, are exe- cuted by or between the same parties at the same time, all are to be construed together as one instrument.   Makepeace *v.* Harvard Col- lege, 10 Pick. 297 ; Stone *v.* Hansborough, 5 Leigh, 422.

There is no peculiar form for the signing of a deed.   It takes effect

from delivery. The old form required no signature even, but a sealing was sufficient; and now the signature is often good, if made by another and adopted by the grantor. Any writing which clearly shows that a party has adopted a sealed instrument as his own, intending to be bound by the contents of it, is, if not a formal, at least a sufficient execution, to satisfy the statute. We have seen that a formal execution of this deed by the husband, would only be a written expression of his assent to it. But surely, in equity, a contemporaneous expression, in writing, of that assent, is not the less effectual because it is expressed, not in the body of the deed, but on the same paper, a few lines below the signature of the wife. If he had added, "The above is my deed," no one would have questioned that it was a good execution. Is there any substantial difference, when he says, "I agree to or with the foregoing deed," especially when, as said before, all that his signature as a party to the deed could amount to, is that agreement? But it is said that there was no execution of the deed by Depeaux, because the instrument is not sealed by him. We do not admit that the statute ever intended so great a strictness *in the mode* of execution by the husband. The *fact* of execution is indispensable, but we see no greater reason for holding to any more strictness in the *manner* of execution in this than in other cases. Could it be contended that if the deed were executed with a seal by the wife, and without a seal by the husband, that this defect would vitiate the deed? We are at a loss to see upon what principle. If there had been no seal, the instrument would have been good, as creating an equity, if not good to cast the fee. But this memorandum, signed by Depeaux, adopts the entire deed, and with it the seal affixed to the signature of the wife. (3 Monroe, 377.) But it may well be doubted whether, in such a case as this, the seal of the husband is necessary, having no estate to convey, but merely assenting to the passing of the wife's title. If the execution were defective in form, the substance of the Act having been complied with, it would be the common case of a defective execution of an instrument, which chancery might correct; but it would vest an equity in the grantees in possession under the deed.

The vice of the whole adverse argument, is in supposing that because

there must be a joining by the husband in the execution of the deed, and an acknowledgment by the wife in the required form, that there must necessarily be a strict pursuance of the *usual form* of the execution of the deed; whereas, as to the mere mode of execution, there is no difference between this class of deeds and other deeds; and as to the rules of construction, between this statute and other general Acts, no difference exists; the sense, policy and substance being the guides, and not the mere words. We think that in equity and practical effect, this deed was executed by the husband and wife; the husband doing, by his agreement at the foot of the deed, (which was duly acknowledged by him) all he could do if he had signed and sealed it as a formal party.

We have examined the cases cited against this view, but we can find no one which, upon principle and analogous facts, opposes it.

The sixth section of the Act of April 17th, 1850, already quoted, requires the acknowledgement to be made before the Judge, etc., and does not empower the Clerk to take it. As this Act was passed the day after the general Act of conveyances, and as the language is prohibitory, it is urged that the acknowledgment before the Clerk of the County Court is invalid.

There is an apparent confusion in the statutes on this subject, but the cause is easily perceived. The Act of seventeenth of April was designed to fulfill the requirement of the Constitution, " more clearly to define the rights of married women." After declaring, in the sixth section, that the husband should have the control of the separate estate of the wife, it was thought necessary to qualify and prevent misconstruction of this language; and, therefore, the Legislature added, by way of proviso, that the husband should not sell—nor the wife—except, etc.

But the sixth section only relates to separate property acquired after the passage of the Act. No retrospective operation was intended, or, perhaps, could have been given to it. In such cases, (see Grimes *v.* Norris, 6 Cal. 621) the statute only operates upon future transactions and matters.

The general Statute of Conveyances embraced as well deeds of separate property, existing before, as that acquired subsequent, to its

passage ; it did so by express terms—for the matter of the statute was the conveyance of estates—those annoyances being in the future, though the estates presently existed.   But the subject of the Act of the seventeenth of April was the separate property itself, and that statute was passed to define and fix the relations of the parties to it; and, by the sixth section, the husband is made the manager of the separate property of the wife, and then the power of sale by him is denied, and the mode of sale fixed ; but this only, by obvious rules of construction, applies to separate property afterwards acquired, or to property held as separate by women married after the passage of the Act.   The Legislature had no power to affect marital regulations or rights fixed by law previously ; and if they had, we are not to presume, in the absence of an express declaration to that effect, that they so intended.   See authorities cited in Grimes' case.

It is next objected that Tracy, the Clerk of Santa Clara, had no power to take the acknowledgment, because he had no seal of office. But this construction of the statute is too narrow.   The Court of which he was Clerk, was entitled to a seal.   This general phrase, " having a seal," was only intended to denote a Court of record, which is defined to be a Court having a seal.   The power of the Clerk was never intended to be made to depend upon the fact of his having procured this article, or the care with which he preserved it.

We have avoided the expression of any opinion upon many questions presented by the record, and have assumed some positions more for the purpose of argument than with a view to decide them, the real question passed upon being the validity of the deed from Martina and Depeaux.   We expressly leave open the question whether a grant, made in the usual form and with the usual conditions, by the Mexican authorities, to a married person, creates a separate estate or common property.   The Court erred in striking out the answer setting up this defense.

The error in excluding this defense, founded on this deed, is sufficient to reverse the judgment below, and, probably, decides the entire controversy.

Judgment reversed and cause remanded for further proceedings, in pursuance of this opinion.