## HUGH H. DOWNER *v.* WILLIAM SMITH.

ALCALDE'S BOOKS—WHEN RECEIVED AS EVIDENCE.—An entry of a grant of land in the Pueblo de San José, made in the Book of Alcalde's Grants, is entitled to be received in evidence upon proof that the persons by whom it is signed were the Alcalde and Clerk of said pueblo at the time it bears date, and that their signatures are genuine, and that the book was one of the books of the Alcalde's office in which Alcalde grants were entered, and that the book belonged to the Recorder's office of Santa Clara County.

ALCALDE'S GRANTS.—The statement of an Alcalde's official character, in the commencement of a grant signed by him, is sufficient to show that he acted in his official capacity, without a *descriptio officii* appended to his signature.

SAME—DELIVERY OF.—Where the original grant of an Alcalde is contained in the book of grants kept by him, no proof of a delivery of the grant is required. The production of the book has the same force and effect upon the question of delivery as the production of an original deed or grant would have by one claiming under it.

QUITCLAIM DEED.—A quitclaim deed will enable the grantee to maintain ejectment for the land it conveys if his grantor could have done so.

JURISDICTION OF PROBATE COURTS.—Probate Courts have no jurisdiction to administer upon the estates of deceased persons who died prior to the adoption of the Constitution.

RECORDS OF PROBATE COURTS. — Where a Probate Court administers upon the estate of such deceased person, its proceedings are not entitled to be received in evidence.

EQUITABLE DEFENSE TO BE PLEADED.—If a defendant in an action of ejectment desires to avail himself of an equitable defence as a bar, he must set it up in his answer with the same particularity which is observed in a bill in equity.

COURT MUST PASS ON EQUITABLE DEFENSE.—The Court, and not the jury, must pass upon the equitable title set up in the answer, and it must be sufficiently pleaded to warrant the Court in granting a decree which will estop the further prosecution of the action. The Statute of Limitations does not begin to run against the title to land derived from the Government of Mexico until a confirmation by a patent from the Government of the United States.

APPEAL from the District Court, Third Judicial District, Santa Clara County.

This was an action of ejectment to recover possession of a lot in San José, Santa Clara County, commenced October 9th, 1861.

The complaint averred, that on the 20th day of September, 1861, plaintiff was seized in fee as the owner of the demanded premises, and that on said day defendant entered upon the premises and ousted and ejected him therefrom, and still detains the same.

Hugh H. Downer *v.* William Smith.

The answer, after denying the allegations of the complaint, set up as new matter that as long ago as 1852, one Redman was seized of the demanded premises, claiming to be the owner thereof, and remained in possession of the same until his death, which occurred in April, 1858. That said Redman left a will, by which he appointed R. A. Redman his executor, and said will was probated in the month following the death of the testator, and the executor received letters from the Probate Court of Santa Clara County, and entered upon the discharge of his duties, and as such, took charge of the property, and continued to possess the same until August 1st, 1861, when the defendant entered into possession under a lease from the executor, and had since continued to occupy as his tenant. That while the testator Redman, in his lifetime, occupied the premises, John Yontz, Public Administrator of Santa Clara County, administered upon the estate of one J. W. Jenkins, who had before that died intestate in said county, and on the 23d day of May, 1853, procured an order of sale of the lot from said Probate Court, and on the 3d day of August, 1853, sold the same, and one Jordan became the purchaser. That the Probate Court confirmed the sale, and on the 15th day of November, 1853, the Administrator executed to Jordan a deed of the premises, and that Jordan sold to Redman the testator. The answer also set up the Statute of Limitations of three years, as provided in case of sale of lands by order of the Probate Court, and also the Statute of Limitations of five years.

The plaintiff, in support of his title, offered in evidence the grant of the Alcalde to Jenkins the intestate, of which the following is a copy:

" *Jusgada del Pueblo de San José de Gde.* :

" Whereas, John Jenkins has applied to this office for Lots 8 and 9, in Block No. 1, and Range No. 2, north of the base line, and said lots being vacant :

" This, therefore, is to certify, that I, John Burton, First Alcalde of the Pueblo de San José de Gde., on the part of the Pueblo, for and in consideration of the sum of what is spe-

cified by law, receipt whereof is hereby fully confessed and acknowledged, have bargained, sold, and conveyed unto the said John Jenkins, and to his heirs and assigns forever, two certain messuages or lots of land, lying and being in the Pueblo de San José de Gde., and known on the plat of said town as Lots Nos. 8 and 9, in Block No. 1, and Range No. 2, north of the base line, and containing each fifty varas square ; to have and to hold the same, with all the rights and privileges thereunto belonging, conditioned and provided, that the said John Jenkins will fence said lots with redwood, or erect a dwelling thereon, on or before the expiration of twelve months from date.

" In witness whereof, I have hereunto set my hand and seal, this 9th day of August, A. D. 1847.

"JOHN BURTON.

" CHARLES WHITE, Clerk."

Jenkins, at his death, left as heirs, brothers and sisters, and plaintiff's quitclaim deed from them was dated July 15th, 1861.

The proceedings in the Probate Court relative to the administration upon the estate of Jenkins bear date at the time averred in the answer, and the deed of the administrator to the grantor of defendant's lessor was executed as therein set forth.    Defendant's lessor claimed the title to the demanded premises by virtue of the administrator's deed, as well as by Sheriff's deeds, executed under sales made on executions against one Curl, who, defendants claimed, was Jenkins' partner at the time of the grant, and that the grant was made for the joint benefit of the two.

Plaintiff recovered judgment in the Court below, and defendant appealed.

*P. L. Edwards*, for Appellant.

The testimony of Curl was admissible and relevant, because an equitable defense was set up, and even though it may have been inartistically pleaded, the trial proceeded upon the merits and without specific objection to the pleadings.    It appeared

that Curl was entitled to at least the undivided half of the lot, and as such, to enforce a conveyance from the heirs of J. W. Jenkins. Besides, the testimony was appropriate under the general pleadings for the purpose of showing that the defendant had an equitable defense, or it may be, rather, that the plaintiff, resting upon the strength of his own title, could not recover. For the same reasons, the judgments and the Sheriff's deeds in the several actions against Curl, under which Redman deduced additional title, were admissible in evidence.

The Statute of Limitations of 1855, relied on by the counsel, most manifestly relates only to cases in which one party claims under a Mexican grant, and another claims under some adverse title. It cannot be construed to embrace cases in which both parties deduce title from the same common source. As to the interests affected by the papers, it therefore makes no difference whether the conflicting titles asserted under the grant have been finally confirmed or not, nor whether one of the heirs of J. W. Jenkins was under the disability of infancy until 1859, or not.

The case of *Johnson* v. *Van Dyke*, 20 Cal. 225, is not at war with this proposition—in fact, confirms it. That was the case of one in possession, and claiming under a *mere color* of title, defending against one claiming under a grant from Mexico, which had not been finally confirmed, the main question being whether the statute would run from the judgment of confirmation or only from the perfection of the survey by which the land was definitely segregated. It cannot affect this case, because the defendant has the possessory and older and better title, and if he cannot set up the lapse of time in bar of the action of the plaintiff, *a fortiori*, the latter cannot maintain his action in virtue of the alleged grant, and if he recover at all, he must do so upon his *mere title*, and this title, according to his own showing, is inchoate and unconfirmed. If the facts preclude the defendant from the benefits of the statutory limitation, they must, *a fortiori*, and of necessity, preclude the plaintiff's right of recovery upon the strength

of his own case. His own assumed title is inchoate and uncon-
firmed, and wholly unfortified by possession, and, according to
his own theory, he can have no title upon which ejectment
can be maintained.

If we understand the counsel, the proposition is stated, that
because J. W. Jenkins died in 1848, the Probate Court of the
State, succeeding the Mexican *regime*, could have no jurisdic-
tion over his estate, and that all of the acts of his several
administrators were therefore void. In support of the propo-
sition, *Grimes* v. *Norris*, 6 Cal. 624, *Tevis* v. *Pitcher*, 10 Cal.
477, and *De la Guerra* v. *Packard*, 17 Cal. 182, are cited.
Unfortunately, however, for the argument, none of these cases
are of the least aid. They recognize the doctrine that the law
of the forum governs the remedy, and are wholly antagonistic
to the position that because a man died before the inaugura-
tion of the new government, therefore there could be no
administration of his estate. The cases cited are all in refer-
ence to wills of real estate, and the questions were as to the
validity of the devises in view of the Mexican law, without
probate under the succeeding State law.

The counsel having assumed that the sale was without juris-
diction and void, then, as a corollary, asserts that the Stat-
ute of Limitations could not run. We conclude the reverse,
from our antagonistic point of view. Besides, we hold that
the defendant, and those under whom he claims, having been
all the time in the adverse possession, may successfully rely
upon the statute. He may rely on either or both statutes.
In our view of the case, there is no necessity for invoking the
aid of the Act of 1860, page 16 ; but we have a right to call
it in aid of irregularities in the proceedings of a Court and
administrator with full jurisdictional and functional powers.
In our view, these proceedings were, at most, irregular, and
we maintain they were not even that. If merely irregular,
they might have been attacked by a direct proceeding, but
not collaterally.

The cases of *Smith* v. *Morse*, 2 Cal. 542, and *Billings* v.
*Hall*, 7 Cal. 13–6, are in harmony with our theory. The first

mainly decides that a deed, void by reason of fraud, cannot be validated as to third persons by an Act of the Legislature; and the second fully recognizes the power of the Legislature to provide and direct as to the remedy. It may be remarked, *in passing,* however, that the counsel came to a singular conclusion when he says that the Act of 1860 was intended only to remedy the difficulty considered in *Becket* v. *Selover.* It is manifest that the decision itself had provided the specific rule as to that very difficulty. The Act must have been intended for something more.

From the hypothesis, then, that the proceedings were not void, but, at most, voidable, it results that the Legislature, *pro hac vice,* had competent power to pass the Act in question—that all the proceedings of all the administrators in this case are valid, and that all the record evidence offered by the defendant is admissible.

There is a long series of decisions to the effect that an Act of the Legislature is not void simply because retroactive. It must, in addition, divest a vested right, or impair the obligation of a contract. The records in the several cases against Curl were proper evidence, because in equity he was at least a co-partner, or at least a tenant in common, with the decedent; and the proceedings in those cases vested all the title of the former in J. W. Redman. This is putting the defendant's case upon its humblest grounds. Was not Curl, in equity, as surviving joint tenant or co-partner in equity, entitled to the whole property? and, if so, did not J. W. Redman succeed to that whole equitable title? If we are right in our position that the proceedings in the Probate Court are not *void,* it results from the counsel's own argument that the several Statutes of Limitation operated as a bar to the plaintiff's recovery. As between her own citizens, the State has a perfect right to determine what shall constitute evidence of title to lands within her boundaries. (*Mims* v. *Palmer,* 6 Cal. 13.)

The order of the Probate Court directing the sale was a

judicial act, and, as such, is entitled to the benefit of all legal presumptions. (*Halleck* v. *Grey*, 9 Cal. 195.)

The title of the purchaser does not depend upon the return or other mere ministerial acts of the officer over which he has no control. (*Cloud* v. *El Dorado County*, 12 Cal. 133.)

In our view, nearly all the questions hitherto presented, including the effect of the statute of 1860, have been decided by this Court. (*Hart* v. *Burnett*, 15 Cal. 616.)

The defendant and his grantors having had the possession, and at least an equity, the plaintiff, when he purchased, was bound to take notice of that title. (*Bryan* v. *Ramirez*, 8 Cal. 467.)

Neither is the defendant's case weakened if it should be held that his paper title is defective. He still has his possessory title unimpaired, and that is all that is necessary. (*Morton* v. *Folger*, 15 Cal. 278.)

The deed under which the plaintiff seeks to deduce his only claim of title, is a mere release or quitclaim, without any words operative as a conveyance. It is only equivalent to the vendor saying, in a legal form, that as against the vendee he would not thereafter assert any claim. It operated as an estoppel only.

It could not pass such a title to the plaintiff as would enable him to maintain ejectment against another in possession and claiming adversely. By the common law there could be no conveyance of land valid as against one in adverse possession. We concede that the rule has been modified in some of our States by statutes, and in others by decisions; but we hazard the opinion that in none has it been so modified as to authorize an ejectment upon a mere deed of release and quitclaim, without words of grant, or a positive enabling statute. Here, we have no such statute—not even a Statute of Uses. (*Mesick* v. *Sunderland*, 6 Cal. 297; Washburn on Real Estate, 596, 606, 620; *Jackson* v. *Dermont*, 9 Johns. 55; *Jackson et al.* v. *Todd*, 2 Caine. 182.)

Such a deed is not sufficient even to catch a title by the vendor subsequently acquired. Its highest effect is by way of

Hugh H. Downer v. William Smith.

estoppel *in personam*. (See particularly, *Valle* v. *Clemens*, 18 Missouri, 486 ; *Jackson* v. *Hubble*, 1 Cow. 613 ; *Jackson* v. *Winston*, 9 Cow. 13 ; *Bogy* v. *Shoab*, 13 Missouri, 366.)

*John H. Moore* and *A. L. Rhodes*, for Respondent.

All the issues in the cause arise upon the denial of the allegations of the complaint and the answer of the Statute of Limitations.

The *new matter* set up by the defendant is not sufficiently alleged to entitle him to any equitable relief, he having failed to allege that the estate of Redman, or any person, held any equitable title or interest in the land ; but, on the contrary, he alleges that at the time of the sale by Yontz, *Redman held the title* and the *possession* of the lot.

John W. Jenkins having died in 1848, his estate was not subject to administration, and therefore the grant of letters of administration was void. (*Grimes* v. *Norris*, 6 Cal. 624–5 ; *Tevis* v. *Pitcher*, 10 Cal. 477 ; *De la Guerra* v. *Packard*, 17 Cal. 182.)

The sale being *void*, the limitation of actions expressed in section 190 of the Act to regulate the settlement of estates of deceased persons, can have no application to this case, for a sale could not be denominated an administrator's sale unless the Court had jurisdiction to order the sale, and the administrator had also power to sell.

By the Court, SANDERSON, C. J.

The objection to the introduction of the book, called in the record "Book No. 3," containing what purported to be Alcalde grants, is untenable. The book purported to contain the grant to one Jenkins, under whom the plaintiff claimed title to the premises in controversy. The grant in question, as appears from the book, was signed by one John Burton, and attested by one Charles White as Clerk. It was shown by the witness Harry Bee, who was sworn for that purpose, that at the time the grant bears date, Burton was the Alcalde of the Pueblo de

San José de Guadalupe, in which the land in controversy is located, and that White was his Clerk; that both Burton and White were dead; that the signatures of Burton and White, appended to the grant, were genuine, and that the book was one of the books of the Alcalde's office in which Alcalde grants were entered.    It further appears, from the testimony of the witness Tisdall, who was Deputy Recorder of Santa Clara County, (the county in which the land is located,) that the book belonged to the Recorder's office of that county.    From these facts, we think the Court was warranted in finding that the book was one of original entries, and therefore entitled to be admitted as evidence upon that ground; but whether upon that ground or not, the evidence was sufficient to entitle the book to admission under the provisions of the Act to legalize certain records in the Recorder's office of the County of Santa Clara.    (Statutes of 1861, 507.)

The further objection to the grant itself, on the ground that Burton had not appended to his signature his official designation, is, in our judgment, without merit.    The Alcalde states his official character at the commencement of the grant, which, together with the fact already proved that he was the Alcalde at the time the grant bears date, was sufficient to show that he acted in his official capacity notwithstanding no descriptio officii was appended to his signature.

The objection that there was no proof of delivery is also untenable.    The grant contained in the book being the original grant, it follows that there could have been no delivery to the grantee other than such as the entry of the grant in the book kept for that purpose imports, except by duplicate.    The production of such duplicate, if any was given by the party claiming under the grant, would be prima facie evidence of delivery.

The second section of the Act above cited provides that the books of record mentioned therein (of which Book No. 3 is one) " * * * may be offered in evidence in the same manner and with the same force and effect in all cases as if they had been produced from the custody of the person claiming under or

through such deed, conveyance, or other instrument in writing." This language was obviously intended to give to the production of the book in question the same force and effect upon the question of delivery which would ordinarily attach to the production of an original deed or grant by one claiming under it; that is to say, make it *prima facie* evidence of delivery.

It is claimed that the Court erred in admitting the deeds of the heirs of Jenkins to the plaintiffs, upon the ground that they were only quitclaim deeds, and therefore insufficient to pass the title. In *Sullivan* v. *Davis et al.*, 4 Cal. 291, which was an action of ejectment, the plaintiff claimed under a quitclaim deed, and it was there held that it was sufficient to enable the grantee to maintain ejectment if his grantor could have done so.

It is next claimed that the Court erred in excluding the proceedings of the Probate Court of Santa Clara County, in the matter of the estate of Jenkins, through which the defendant claimed to have become vested with the title of the original grantee. It appears from the record, that Jenkins died in August, 1848, prior to the existence of California as a State. In *Grimes' Estate* v. *Norris*, 6 Cal. 621, it was held that the Probate Court had no jurisdiction over the probate of the will of a party who died before the organization of the State Government. The doctrine there laid down was subsequently affirmed in *Tevis* v. *Pitcher*, 10 Cal. 465. There is no difference in principle between those cases and the present, so far as the question under consideration is concerned.

The Act to regulate the settlement of the estates of deceased persons makes no express provision for an administration upon the estates of persons who died prior to the adoption of the Constitution, and in the absence of any such provision it cannot be so construed as to embrace such cases. It was the evident intention of the Legislature to leave such estates to be settled by and under the law as it stood prior to the Constitution.

It follows that the Probate Court could assume no jurisdic-

tion over the estate of Jenkins, and that all its proceedings and their consequences, being, therefore, null and void, were properly excluded.

The next error assigned is, that the Court erred in excluding a mass of evidence tending to prove in the defendant's landlord an equitable title to one half of the premises in controversy, derived from one Curl, who was the surviving partner of Jenkins. and claimed that the lot in question had been purchased by Jenkins with partnership funds, and that by reason thereof he held in trust for him to that extent. A sufficient answer to this assignment is found in the fact that no equitable title is set out in the answer. The name of Curl is nowhere mentioned in the answer, nor his claim of title referred to, nor are any other facts upon which an equity could be based intelligibly stated. Under the pleadings, we are compelled to hold that the parties stood upon their legal rights only. If the defendant in an action of ejectment desires to avail himself of an equitable defense as a bar, he must set it up with the same particularity which is observed in a bill in equity. The equitable title is for the Court, and not the jury, and must be sufficiently stated to warrant the Court in granting a decree which would estop the further prosecution of the action; and, unless this is done, the defendant must be regarded as relying solely upon his legal title. For these reasons, the Court did not err in excluding the evidence in question.

Under the view we have taken, the defendant is forced to rely upon his possession, which cannot stand in the presence of the plaintiff's title. Nor can that possession be aided by the Statute of Limitations. The title of the plaintiff is derived from the Mexican Government, and being yet unconfirmed, the statute does not run against it.

Judgment affirmed.

Mr. Justice RHODES, having been of counsel, did not sit on the trial of this case.