THOMAS BODLEY v. PARTHENIA S. FERGUSON AND MATHEW FALLON et als.

CONTRACT OF MARRIED WOMAN TO CONVEY LAND.—A Court of equity will compel a married woman, or her grantees with notice, to execute a contract to convey her separate real estate, acquired by her before the cession of California, if the facts are such as to warrant a Court of equity to give relief.

SEPARATE PROPERTY OF MARRIED WOMAN.—The Act of April 17th, 1850, defining the rights of husband and wife, does not apply to the separate property of married women who lived in this State and acquired such property before its cession to the United States.

CASE AFFIRMED.—The case of Ingoldsby v. Juan, 12 Cal. 564, affirmed.

EVIDENCE TO PROVE CONTRACT OF MARRIED WOMAN.—The Act of April 16th, 1850, " concerning conveyances," has no bearing upon the question of the character of evidence by which the contract of a married woman to convey her separate estate may be proved.

RIGHTS OF MARRIED WOMAN UNDER CIVIL LAW.—Under the civil law a married woman could contract to convey her separate property, and convey it with the bare assent of her husband.

RIGHT OF MARRIED WOMAN TO CONVEY SEPARATE PROPERTY. — The treaty by which California was ceded to the United States preserved to married women then living in this State and owning separate property therein the right to contract to convey, or to convey, separate property, and neither the Constitution nor laws of this State can deprive them of that right or unreasonably interfere with its exercise.

EVIDENCE OF MARRIED WOMAN'S CONTRACT TO CONVEY LAND.—The Act of April 16th, 1850, concerning conveyances, does not provide for any method by which the contract of a married woman to convey her separate estate must be evidenced, nor does it require that her contract to convey and her conveyance of such property shall be executed in the same manner.

SEPARATE ESTATE OF MARRIED WOMAN ACQUIRED BEFORE 1850. — A married woman who resided in this State and owned separate property therein before its cession to the United States, may convey or contract to convey the same without any restrictions except those applicable to common law contracts, and without following the provisions of the Act defining the rights of husband and wife, passed April 17th, 1850.

WHAT A CONTRACT TO CONVEY LAND PASSES. — A contract to convey land passes the equitable fee simple title to the grantee and his heirs, even if it runs to the grantee alone, and not to the grantee and his heirs.

WORD "HEIRS" IN CONTRACT TO CONVEY LAND.—The feudal doctrine that the fee simple passes only by a deed running to the grantee and his heirs, does not extend to contracts to convey land.

DEFENSE SET UP IN ANSWER. — Whether an answer states a purely legal or an equitable defense, must be determined by the answer itself, and not from the findings of the Court.

ANSWER CONTAINING BOTH LEGAL AND EQUITABLE DEFENSE. — An answer in an action of ejectment, where both parties claim under a common grantor, which sets up as a defense a legal title in defendant, and also a verbal contract made by plaintiff's grantor to convey, and an entry under and a subsequent purchase by plaintiff, with notice, contains both a legal and equitable defense.

JURY TRIAL ON EQUITABLE DEFENSE SET UP IN ANSWER.—Where the answer contains both a legal and equitable defense, the Court may first try the equitable defense, and refuse the plaintiff a jury trial, and if the facts warrant it, grant the equitable relief prayed for.

APPEAL from the District Court, Third Judicial District, Santa Clara County.

The defendants in their answer set up as an equitable defense the state of facts found by the Court. The defendants moved the Court to try and determine the equitable defense before the trial of the action at law. The plaintiff objected, but the Court granted the motion, and on the trial the defendants offered in evidence a deed of the demanded premises, executed on the 24th day of June, 1852, by John Gilroy and Clara Maria Ortega, his wife, to Allen and Smith. The con-

veyance was to John B. Allen and Ferdinand A. Smith, without any insertion of the words "heirs or assigns." The deed was acknowledged before a Justice of the Peace. The plaintiff objected to the deed being received in evidence, because the certificate of acknowledgment by the Justice of the Peace did not prove its execution by the wife, nor its genuineness, and because the Justice had no authority to certify to the acknowledgment of a married woman to a conveyance of her separate estate.

The Court overruled the objection, and plaintiffs excepted. There was a subscribing witness to the deed, who was then produced by the defendants, and an offer was made to prove that the subscribing witness saw the wife execute the deed and saw her deliver it. The plaintiff objected to this evidence, because Mrs. Gilroy was a married woman, and it was not competent to prove the execution of a deed by which a married woman conveyed the separate estate by any other evidence than a certificate of acknowledgment made in due form, in conformity with the Act of April 17th, 1850, defining the rights of husband and wife. The Court overruled the objection.

The plaintiffs claimed title to the demanded premises under a deed made September 27th, 1857, by John Gilroy and Clara Maria Ortega, his wife, to Miguel Gilroy, which was acknowledged in accordance with the Act of April 17th, 1850, defining the rights of husband and wife. The plaintiffs claimed that the conveyance to Smith and Allen was void, because it was acknowledged by a Justice of the Peace. The Court adjudged that the plaintiff had no right or title to the land, and that the defendants owned it, and perpetually enjoined any further prosecution of the action at law to recover possession. The plaintiff appealed from the judgment and from an order denying a new trial.

The other facts are stated in the opinion of the Court.

65

*W. T. Wallace,* for Appellant, argued that the conveyance from Clara Maria, the wife, was not admissible in evidence for any purpose, because its acknowledgment was certified by a Justice of the Peace, and referred to the sixth section of the Act concerning husband and wife. He contended that said Act applied to separate estates of married women which had vested before the passage of the Act as well as to those which vested after its passage, because Article II, Sec. 14, of the Constitution provided for legislation concerning then existing separate estates, and the Act of April 17th, 1850, was passed in obedience to this section. He argued that to read the Act of April 17th, 1850, as not embracing in its provisions separate estates of married women theretofore existing, would be to make the husband tenant by courtesy of the wife who died leaving issue, and would also entitle the wife to dower in the separate real estate of the husband. He argued also that the conveyance to Smith and Allen only passed to them a life estate by its terms, because it did not run to their heirs, and that Bodley therefore had the reversion in the premises, and that the judgment was erroneous, because it pronounced that Bodley had no interest in the land.

*D. P. & A. Barstow,* for Respondents, argued that the deed of Gilroy and wife to Smith and Allen was good as a legal defense, because the twenty-first section of the Act of April 16th, 1850, authorized Justices of the Peace to take and certify acknowledgments of married women without making any distinction in relation to their separate estate, and that the Act of April 17th, 1850, defining the rights of husband and wife, did not refer to the conveyance of a married woman's separate estate acquired by them before the passage of the Act, and that therefore a married woman could convey her separate estate acquired before April 17th, 1850, or contract to convey the same without any other restrictions than those imposed by the Act of April 16th, 1850, concerning conveyances; and cited *Ingoldsby* v. *Juan,* 12 Cal. 564. They also argued that if the construction of the two Acts contended for

was not sustained by the Court, that neither by the Constitution nor laws of this State, could any restrictions be imposed on the sale of the separate property by married women acquired by them before the cession of California to the United States.

By the Court, SHAFTER, J.:

This action is brought to recover the possession of nine hundred and thirty-two and a half acres of land, situate in the County of Santa Clara and parcel of a grant of one league made by the Mexican Government to Clara Maria Ortega Gilroy, in the year 1838, she being then and since the wife of John Gilroy. Both parties claim under Mrs. Gilroy—the plaintiff through a deed executed by her and her husband to Miguel Gilroy, on the 18th of November, 1858, and the defendants through an alleged equitable title, older than the admitted legal title of the plaintiff.

The facts found by the Court, in so far as they bear on the defendants' equity, are as follows: " On or about the 24th day of June, 1852, said Clara Maria Ortega Gilroy, with the consent and co-operation of her said husband, bargained and sold for a full and valuable consideration to her then and there paid in the gold coin of the United States, to J. B. Allen and F. A. Smith the premises described in the complaint; * * * and at the same time full and complete possession thereof was duly delivered to them by said Gilroy and wife; * * * and from that time to the commencement of this action the said Allen and Smith, and the defendants Ferguson and Fellow, who have succeeded to all the rights which Allen and Smith acquired by said purchase, have had the full, quiet and peaceable possession thereof as owners, and their title thereto has been at all times freely acknowledged and confirmed by the said Gilroy and wife. * * * That Allen and Smith put improvements upon the land of the value of ten thousand dollars and upwards, and that defendants, who succeeded to their title in 1856, entered into possession in that year, and erected

dwelling houses and fences, planted orchards and made lasting and valuable improvements thereon at a further cost of ten thousand dollars, and that defendants have resided upon the premises from that time to the present with their families, having the land wholly inclosed with a substantial fence." That the plaintiff acquired the legal title in 1863 with full notice of all the facts constituting the defendants' equity. That the land at the date of the plaintiff's purchase was worth one hundred thousand dollars, and that the consideration paid by him was little more than nominal.

There can be no doubt that the findings support the equitable defense set up in the answer, nor that they entitle defendants to the relief prayed for therein. The findings show a contract to convey on the part of Mrs. Gilroy, to which contract her husband assented; full payment of the purchase money; possession taken by the vendees, and extensive improvements by them, and by the defendants who claim under them by assignment. Nor do we understand the counsel of the appellant to contend that the judgment is not according to the legal effect of the facts as found. The error complained of is that the facts were found on incompetent testimony, to the admission of which objection was made at the trial.

## Proof of contract of married woman.

The position taken by counsel is, that the alleged contract could be proved only by an instrument in writing executed and acknowledged in conformity to the Act of April 17th, 1850, defining the rights of husband and wife. This position, however, is not tenable. The Act of April 17th applies only to the separate property of women married subsequent to the passage of the Act, and to property acquired after the passage of the Act by women married before its passage in this State, or married out of the State and residing and acquiring property in it thereafter. That was one of the points determined in *Ingoldsby* v. *Juan*, 12 Cal. 564, and the correctness of the decision as to that point has never been judicially questioned.

The case was referred to as authority in *Morrison* v. *Wilson*, 13 Cal. 496 ; and in *Maclay* v. *Love*, 25 Cal. 383, it was treated as presenting a true exposition of the statute. The construction given to the Act in *Ingoldsby* v. *Juan*, is well borne out, in our judgment, by the fourteenth and fifteenth sections ; but if we regarded the question as a doubtful one, we should not now be inclined to re-open it.

The Act of the 16th of April, 1850, " concerning conveyances," has no bearing upon the question of evidence under consideration. Mrs. Gilroy, under the civil law, was competent to contract to convey her separate property, and to convey it, with the bare assent of her husband, (12 Cal. 564,) and her capacity to do both or either was preserved and guarded by the treaty ; and she could neither be deprived of the power, nor be unreasonably interfered with in its exercise by either statute or constitutional provision. The Act of April 16th, 1850, prescribes a method by which married women can convey their separate property, but it points out none in which their contracts to convey must be made or evidenced. Nor can it be claimed that the method of conveying and that of contracting to convey, were intended by the Legislature to be identical ; for the thirty-eighth section of the Act expressly withdraws executory contracts to convey from its operation. The only statute in this State bearing upon the process by which a woman—married and acquiring separate property anterior to the cession—can bind herself by contract to convey, is the Statute of Frauds, and its provisions apply indifferently to all persons having the capacity to make contracts of that character. Cases of part performance of contracts to convey are excepted from the operation of the statute, and may be proved by parol.   (Sec. 10.)

*Power of married woman to contract.*

The Act adopting the common law, passed April 13th, 1850, did not take away the capacity of Mrs. Gilroy to contract concerning her property, for that would be to make the Act paramount to the treaty and the Constitution ; and her

capacity being given, the only tests to which her contracts can be subjected are those applicable by the common law to contracts at large.

The cases of *Selover* v. *American Rus. Co.*, 7 Cal. 274, *Barrett* v. *Tewksbury*, 9 Cal. 15, and *Maclay* v. *Love*, were all considered as following within the Act defining the rights of husband and wife, and were determined with sole reference to its provisions. That Act not only prescribes how a married woman shall convey, but dictates a special process in conformity to which alone she can contract to convey, and the numerous cases cited by counsel from other States were decided under statutes containing kindred provisions.

It is a matter of no moment that the contract of Mrs. Gilroy as found, did not run, in terms, to Allen and Smith and their heirs. The finding is that she bargained and sold the land to them for a full and valuable consideration. The rule that a fee simple passes only by a deed running to the grantee and his heirs, was of feudal origin ; and if on foot in this State at the date of Mrs. Gilroy's contract, it must be considered as operating only upon cases following within its letter. It was long since settled that the rule was not applicable to devises, and we know of no ground upon which it can be extended to contracts to convey. In all cases of contract the intention of parties is to be determined by the language used, taken in its ordinary sense unembarrassed by any mere technical rules ; and the terms of the contract now in question clearly call for the largest estate that can be had in land.

Judgment affirmed.

Mr. Justice Rhodes expressed no opinion.

By the Court, Shafter, J., on petition for rehearing :

Petition for rehearing. The petition is put upon the ground that the judgment should be reversed, for the reason that the Court erred in refusing to the plaintiff a jury trial on a traverse of the answer, inasmuch as the answer stated a legal and not an equitable defense.

Whether the answer states a case within the equity jurisdiction or not must be determined by the answer itself. No light can be thrown upon the question by referring to the position that counsel took in argument, or may have failed to take in this Court or in the Court below. Nor have the findings of the Court any bearing upon the point. The answer meant everything before the trial that it means now.

The answer, so far as it relies upon the deed of Mrs. Gilroy to the defendants' grantors, states a purely legal defense, and if it stated no more, there could be no question of the plaintiff's right to a jury trial. But the answer, over and beyond the legal title set up in the defendants, sets forth a parol contract to convey, with a view to the due execution of which the unacknowledged deed of Mrs. Gilroy was given. The terms of that contract are fully charged in the answer—and the entry and possession of the vendees under it—and the costly improvements made by them upon the land—and the subsequent purchase of the plaintiff, for a nominal sum, and with full notice of the defendants' transactions on the land and of the contract under which they and their grantees entered, and the answer winds up with a prayer " that Bodley may be decreed to have no title in said premises or to any part thereof, but that as against him the same may be decreed to be the property of the defendants; that he may be decreed to hold the title and interest if any, which passed to him by said conveyance from said Montgomery, in trust for them; and that he may be decreed to convey, by a good and sufficient deed, all said title, interest or claim to said defendants on demand, and that their title to said premises may be quieted, and that they have such other and equitable relief as may be agreeable to equity." That these allegations disclose an equitable defense, resting upon equitable ownership, is undeniable. They were made upon the theory that the legal title was or might turn out to be in the plaintiff instead of the defendants, and they were intended to burden that title with a trust *in invitum* in the hands of the plaintiff. The relief asked for is equitable altogether. These facts not only demon-

strate the quality of the answer, but show also that an appeal to the equity jurisdiction was a prevision, and not an afterthought, of the defendants or of the counsel by whom they were represented. That the Court dealt with the case at the trial in the equity aspect of the answer is apparent from the circumstance that all the equitable issues were fully responded to, and though the decree does not give all the equitable relief prayed for, nor all that the defendants were entitled to, still all of the relief given was equitable, and the plaintiff cannot complain on the score of the deficit. It is true that the Court has found that the legal title was in the defendants, as charged in the answer. But the finding does no harm, and for the reason that the charge did none. The special defense was drawn with a law aspect and with an equity aspect. Perhaps the plaintiff might have compelled the defendants to elect on which of the two aspects they would go to trial, but he did not. In the end the defendants voluntarily elected to take equitable relief, based upon the equitable facts found under the equity aspect of the defense. Had the defendants elected in the end to take a common law judgment, based upon the finding that the deed referred to was an operative conveyance, the election would have related back to the trial, and the judgment would have been reversed on the ground that a trial by jury was claimed and improperly denied.

The petition is denied.