### No. 1,425.

MARY LOVE, Respondent, v. B. F. WATKINS, Appellant.

Married Woman.—Contract by, prior to Marriage.—Specific Perform-
ance.—When a married woman has, prior to her marriage, entered into
a contract which is binding upon her, a specific performance may be
decreed notwithstanding her subsequent marriage.

Idem.—Separate Property.—Executory Contract.—An executory contract
for the sale of the wife's separate property, executed by the husband and
wife in the mode prescribed by the Statute, defining the rights of hus-
band and wife, is valid and binding on the wife, and may be enforced
by a decree of specific performance.

EXECUTORY CONTRACT.—VENDEE IN POSSESSION.—EJECTMENT.—A vendee in possession under an executory contract, the condttions of which have been performed on his part, may avail himself of his equitable title as a defense to an action of ejectment brought against him by the holder of the legal title.

IDEE.—A party who has been permitted to remain in possession under a contract for the purchase of land, for a long period of time, without objection, will be held to be in possession under his contract, although his original entry may not have been under the contract, and no provision as to possession was contained in it.

STATUTE OF LIMITATIONS.—TRUSTEE AND CESTUI QUE TRUST.—The Statute of Limitations does not run in favor of a trustee, as against the *cestui que trust*, while the latter is in possession of his estate, and there has been no adverse holding on the part of the trustee.

IDEM.—VENDOR AND VENDEE.—The Statute does not run against a vendee in possession under an executory contract, so long as he remains in possession with the acquiesence of the vendor.

The facts are stated in the opinion.

*C. T. Ryland,* for Appellant.

*First*—Appellant being in possession of the land sued for and having an equitable title thereto, can defeat a recovery at law. The contract to convey under which appellant claims is in effect an agreement by which Love and wife conveyed, or agreed to convey, one undivided tenth of the land or premises described first in the complaint to Howard and Perley, with a stipulation to divide the same, and to appoint appraisers of value on the division. All this was in consideration of the services of Howard and Perley.

The word " pay " is one of large and varied signification. In this instrument it is equivalent to a sale or an agreement to convey one tenth of the thing about which the parties were treating.

This meaning or construction is borne out by the subsequent provision for *division, possession,* and *valuation* of the thing sold.

The word "pay" in the following instruments imported a sale :

Bath, January 13, 1861.

" Pay Abram Lent for 68 24-100 bushels wheat in store, at three cents, below first quality wheat."

"Pay Abram Lent 33 46-100 bushels wheat." (*Lent* v. *Hodgman*, 15 Barb. 274 ; *Norton* v. *Woodruff*, 2 Coms. 153 ; *Smith* v. *Clark*, 21 Wend. 83; *Rutherford* v. *Green Heirs*, 2 Wheaton, 196.)

The word pay in the instrument at bar passed a present interest either at law or equity ; in and to one tenth, undivided, of the land. Not one tenth of the money raised on sale of the land, but one tenth undivided in all the land itself. Afterwards it was provided that, if it was advisable that any part of the land should be sold, then Howard and Perley were to have one tenth of the money received from such sale.

The whole contract shows the passage of an immediate interest in, and claim to, one tenth undivided of the land ; subject to be defeated only by the rejection of the claim by the highest Court to which the same might be carried.

The land claimed has been finally confirmed. Howard and Perley have fully paid for their one tenth. Defendant, Watkins, is in possession under this contract and has inclosed the land, etc. How then the defendant can be turned out by the very party who agreed to pay, that is to sell, to grant, to convey, and did sell and agree to divide and give possession, without the violation of the plainest principle of justice and common honesty, I cannot understand.

*Second*—The contract under which appellant claims, is valid and binding on respondent. The contract was made by a married woman and her husband in writing, duly signed by both, and duly acknowleged by both before a proper officer.

The Court will observe that the contract was originally made on the third of November, 1854, but was not acknowledged by husband and wife till January 5th, 1861 ; hence, under the law concerning husband and wife, it did not become valid and binding till the latter date. At that date, Howard and Perley had fully performed all that they had undertaken to perform. That appears from the contracts themselves, which are made part of the findings, and from findings fifth and sixth.

The case stands as if on the fifth of January, 1861, the respondent and her husband had, for a valuable consideration already received from Howard and Perley, made the contract.

Now, why is it that this is not a valid contract?

The statute concerning conveyances does not declare it invalid, but the contrary. (See Section 24 of that Act, as amended in 1855.)

Section 36 of the same Act excludes executory contracts from the meaning of the word conveyance, but it will be seen that Section 24 not only includes *every conveyance* but *every instrument* of writing setting forth an agreement to convey or whereby any real estate may be affected, and hence it is a much more comprehensive enactment than Section 36. Section 24 declares that all such instruments as the one in question are valid and binding upon the parties.

Respondent may reply that, this latter statute and the statute concerning conveyances except executory contracts. If that be true, then we must look to the doctrine of equity, or the statute concerning husband and wife. If we look to equity we find it treats married women as *femmes soles*, as to their separate property. Upon this proposition so well established, we think it unnecessary to cite authorities. It is laid down in all law books treating of such matters. If, then, we look to equity, we have a binding, a valid contract, one that a Court of equity will respect and enforce.

But, says respondent, the law concerning husband and wife is the rule in such cases, and that law declares such instruments void.

Let us grant that the Act of husband and wife does apply, and that it is the only rule to be applied in this case. Then we say that we still have a valid and binding contract measured by that rule.

The sale or alienation is made or created by an instrument in writing as required by that statute; it is signed by both husband and wife. She acknowledges it upon an examination separate and apart from her husband, before a Notary Public.

There is nothing in the case of *MacLay* v. *Love*, [25 Cal. 367]; or *Bodley* v. *Ferguson*, that militates against this doctrine. Nor am I aware of any case in this Court, which even hints that such an instrument is not valid.

What is wanting? We say nothing. Respondent, however, may contend that executory contracts or instruments are excepted from the operation of that law. How? When? Where?

I am aware that by Sec. 36, of same Act, executory contracts are excepted from the meaning of the term conveyance, but the exception is in-favor of appellant, and leaves Sec. 24 in full force.

If the Statute of frauds be invoked, we have shown a good contract.

If we are to judge of this contract according to the doctrine of equity then *quoad*, her separate property, this contract is good.

And finally, if we are to be judged by the act defining rights of husband and wife, we have a valid contract made in accordance with its provisions. In short, we have shown a good and valid contract under any one of the four rules. Also, (*Smith* v. *Green and wife.*)

*Third*—There is no bar by the Statute of Limitations. This claim is not barred by the Statute, because the appellant was in possession. He had the fruits of the contract. He was really and in truth, and in equity, a tenant in common with the respondent in the land in dispute, and whilst he could never bar his co-tenant without a direct and actual exclusion of her from the land, so respondent could not bar her co-tenants title, except under similar circumstances.

The Statutes will bar a title in equity no sooner than a title at law, and an equitable owner or co-tenant is protected by the law as much as the holder of the legal title.

There is no distinction made by the Statute itself, nor ought there to be upon principle.

The fact that the appellant originally entered into possession without color of title, against the will of respondent, can make no difference, because he afterwards acquired an

interest in the land, and became in equity a tenant in common with her. Appellant now stands in Howard's shoes. (*Carpenter* v. *Mendenhall*, 28 Cal. 484.)

Before the Statute could be set on foot in this case, there must be some repudiation of the contract, some positive denial of the right of the appellants claim or title.

There should be an eviction of the possessor of the land under an equitable title, before the Statute should be allowed to run at all, otherwise, the longer the holder of an equitable title remained in possession, the less equity he would have; a thing which is absurd upon its face.

Whenever the legal title is one person, and the real interest in another, they form but one title, and the Statute of Limitations does not run between the holders of such title until the trustee disclaims and acts adversely to the *cestui que trust*. (*Rush* v. *Barr*, 1 Watt. Penn. 110; *Lyons* v. *Marclay*, Id. 271; *Angell* v. *Limitations*, § 472.)

If the appellant has the legal title, then of course, he is not barred, for he is and has been in possession and has the title.

If, however, he has not the legal title, but has the equitable one and is in possession, the law presumes him rightfully there, and it also presumes that the respondent under his contract, holds the legal title for him as his trustee, and so long as this trust is a subsisting one, the Statute does not run. (*Angell*, 462-4.)

The trust must be repudiated and a knowledge of that fact must be brought home to the *cestui que trust*. I venture to say that no case can be found where the trustee has been able to set up the Statute of Limitations against his *cestui que trust* in possession, without his direct and positive repudiation of the trust, and with a knowledge brought home to the *cestui que trust*, or without an eviction.

In this case however, there is no proof or finding of such repudiation, nor of such eviction.

It cannot be, it ought not to be the law, that the equitable owner in possession should lose his right, simply because he did not enter into litigation about that which equity deems he already has.

*Moore* and *Lane*, for Respondent.

Appellant makes three points in his brief. We propose to review them in their order.

*First*—His first proposition is, "that appellant being in "possession of the land sued for, and having an equitable "title thereto, can defeat a recovery at law."

We are of the opinion that the instrument, under which appellant claims, is nothing more than a memorandum between the parties as to a contingent fee, and that the land was referred to in order to fix some standard by which to determine the amount of the same, should it ever become payable under the terms of the memorandum.

The words used, do not import a present conveyance of lands, nor a contract to convey. No provision is made for the execution of a deed, and Love and wife are allowed to pay the fee in money, in the event of a sale of the land; hence, we submit, that the instrument in question is neither a conveyance of land nor a contract to convey. If intended as a deed it would be void for uncertainty.

The authorities cited by appellant in regard to the words, "pay" and "take," refer to their use in regard to personal property and are otherwise not in point, as an examination of them will show.

*Second*—"The contract under which appellant claims, is "valid and binding on respondent." This proposition we deny.

Counsel asks why is this not a valid contract. Our answer is, because a married woman has no power to make an executory contract.

To be of any value, it must be binding on her personally, to enable the Court to compel her to execute it. Nor has a Court of Equity any power to compel a married woman to specifically perform a contract.

It has been well settled in this State by a long course of decisions, that a married woman has all the disabilities under our system that she had under the common law, except where those disabilities have been specially removed by

Statute, and that she has no power to *contract.* (3 Cal. 88; 4 Cal. 285; 5 Cal. 458; 6 Cal. 72; 10 Cal. 267.)

Now under the decision of this Court, in the case of *Ellis* v. *Janes,* (7 Cal. 409,) the instrument cannot be anything more than a contract to convey.

Our statutes have not conferred on a married woman the power to make an executory contract to convey her separate property, and this is admitted to be the separate property of the respondent.

But our statutes, as we read them, have not only left a married woman under the disability of the common law, but they are so framed as to show clearly, that it was the intention of the legislators that she should have no such power as that contended for by appellant. (Hittell, vol. 1, pages 660 and 661; also, Id., Sec. 36, pages 667 and 668.)

Again it was held in the case of *Selover* v. *American Russian Commercial Co.* (7 Cal. 274-5,) "that the acknowl-"edgment is a necessary part of the conveyance of the real "estate of a married woman.   *   *   *   Up to the "last moment she may retract the execution of the deed. "Without such acknowledgment the deed is absolutely "void." Now, if this be law, how can a Court of Equity compel her to do this?—Will it appoint a Commissioner to do it for her? Such a position is absurd. In the case of a *femme sole* or a person not under such a disability, the simple signature, with a seal, is sufficient to bind the party.

The acknowledgment is only evidence that the deed has been executed. But in the case of a married woman, the acknowledgment is a part of the very instrument itself.

Again in the case of *Phelan* v. *Supervisors of San Francisco,* (9 Cal. 15), the Court held that " her consent must be pefectly free." Can it be said to be " free " if compelled by imprisonment or other compulsion of a Court?

Similar views were held in the case of *Mott* v. *Smith* (16 Cal. 556, bottom of page ; see, also, *Maclay* v. *Love,* 25 Cal. 367 ; *Smith* v. *Green,* Pacific Law Magazine, vol. 1, No. 3, page 89 ; see, also, Dart on Vendors and Purchasers, American Edition of 1851, page 462, and page 498 and note.)

Counsel refers to the 6th section of the Statute concerning husband and wife, and says he has a contract binding under that section. Now, it will be observed that that section does not enable a married woman to make an executory contract; it is not an enabling Act; it imposes on a married woman the duty of executing such contracts as she has the power to execute in a particular way. It is restrictive, and profits appellant nothing.

*Third*—"There is no bar by the Statute of Limitation." We affirm that there is, and that the judgment is therefore correct.

The appellant in this case, stands in no better position than he would have done had he brought a suit in equity to enforce the specific performance of his contract, and filed his bill in that behalf on the third day of January 1866, (the time at which he filed his answer), and the Statute of Limitations had been plead thereto. This position is fully borne out by the authorities hereinbefore cited, in regard to equitable defences to a suit in ejectment. So far as this case is now concerned, appellant is to be treated as a plaintiff, seeking a specific performance of his contract. The law puts in answer for us embodying everything that we would desire to urge, that would have been good if properly pleaded to a bill for specific performance; in addition to this we filed a demurrer to the answer raising the point directly. We insist therefore, that appellant's reasoning in regard to the Statute of Limitations is wide of the mark.

In contracts founded on conditions, the Statute begins to run from the happening of the specified condition, or, in other words, the Statute begins to run from the time the right of action accrues to the party. (Angell on Limitations, p. 107, Sec. 4 ; 2 Story's Equity Jurisprudence, Sec. 1521 a.)

Now it appears that Howard and Perley were entitled to their fee whenever the Board of Land Commission should decide in favor of the respondent, and it appears from the answer of the appellant that it was so confirmed on the tenth day of July, 1855; then the right of action accrued.

Or, take it that the right of action accrued on the fifth day of January, 1861, when the contract was made and executed, wherein it was solemnly admitted on both sides that Howard and Perley had fully complied with their agreement, etc. From that time to the filing of the answer, on the third day of January, 1866, was more than four full years. (See Hittell, vol. 1, par. 4359–4364.)

*C. T. Ryland,* for Appellant, in reply.

*First*—The Statute of Limitations can only be made available by plea.

The respondent has put in no plea of the Statute of Limitations except by demurrer; but the demurrer was overruled, and the respondent has not appealed from the order overruling it. Respondent should have set up that defense by answer. (*Brown* v. *Martin,* 25 Cal. 82 ; *Farwell* v. *Jackson,* 28 Cal. 105.)

The contract under which appellant claims, did not become binding on respondent until she and her husband acknowledged it properly, and that was not done until the fifth day of January, 1861, and after Howard and Perley had fully performed the service, and paid for one tenth of the land.

TEMPLE J., delivered the opinion of the Court.

The plaintiff acquired her title to the premises in controversy in April, 1854, (she being then a *femme sole*), and on the third of November, 1854, after her marriage, jointly with her husband, signed and delivered to Howard and Perley, an agreement in writing, by the terms of which Howard and Perley agreed to prosecute the claim of plaintiff for a tract of land, including the demanded premises, before the United States Land Commission. In consideration of such services plaintiff was to pay Howard and Perley one tenth of said tract of land, or if it should be advisable to sell any portion of the land, then Howard and Perley were to have one tenth of the proceeds. As soon as the claim was decided by the Commission (if confirmed) the portion

of Howard and Perley was to be immediately set off to them, their heirs or assigns, and possession given. This contract, although signed and delivered, was not acknowledged by the plaintiff in the manner required by the Statute, so as to be binding upon her, until the fifth day of January, 1861, when it was duly acknowledged and recorded. Before that time all the services mentioned in the agreement had been performed by Howard and Perley, and the claim had been confirmed by the Commission, and this was known to the plaintiff and her husband at the time.

In January, 1855, defendant entered upon the premises without color of right and against the will of the plaintiff, and has since remained in possession of the portion sued for, being about twelve and one half acres. On the seventeenth of February, 1863, he acquired the interest of Howard in the contract and in the land, acquired by virtue of the contract, and has since remained in possession, claiming the right of possession under the contract, and has made improvements thereon.

The plaintiff sued the defendant in ejectment on the thirteenth day of December, 1865, the claim having been duly confirmed within a period of less than five years before the suit was instituted. The answer of the defendant, setting up the facts above stated as an equitable defense, and claiming a specific performance of the contract, was filed January 3d, 1866. Judgment below was for the plaintiff, and apparently was principally based upon the proposition that a right of action upon the contract to convey (if such a contract is valid) accrued on the fifth day of January, 1861, and was, therefore, barred by the Statute of Limitations before the commencement of this action. The defendant's equity, therefore, was not a live equity, and not available in his defense. But it is claimed here, not only that the rights of the defendant under the contract (if any such rights ever existed) are barred by limitation, but that the contract itself is invalid because a married woman has no power to make an executory contract. It is not contended that the contract was valid prior to the time it was properly

acknowledged in 1861. At that time Howard and Perley had fully performed the contract on their part, and by its terms were entitled to an immediate partition and to possession of their share of the land.

Tested by the principles of the common law the plaintiff's contract would undoubtedly be held invalid, and the only question is, whether the Constitution and the Laws of this State have conferred upon married women the power to bind themselves by such contracts. In the case of *Maclay* v. *Love* (25 Cal. 367), the power of a married woman to execute a contract which imposes a general liability, not expressly made an incumbrance upon her separate estate, was fully discussed, and to the conclusions there arrived at we still adhere. The precise question involved here did not arise, and was not discussed in that case.

It is first objected to the power of a married woman to bind herself by an executory contract to convey, that a Court of Equity has no power to compel a specific performance of her contract ; that the acknowledgement is an essential part of the conveyance of the separate property of a married woman ; that her consent must be perfectly free, and that up to the last moment until these facts are duly certified by a proper officer, and the deed delivered, she may retract the execution of the same. Of course this state of facts cannot exist when a deed is obtained by compulsion of a court.

This argument is equally conclusive against the power of the courts to compel the specific performance of a contract made by a married woman, *dum sola.* If, therefore, while a *femme sole,* she enters into a contract to convey, and receives the full consideration for the land sold, she cannot be compelled to perform the contract, though in law it is perfectly valid, if, before conveyance is made she becomes a *femme covert.* I cannot think the Statute was intended to work any such result, or that by any fair construction it has that effect.

The provisions of the Act concerning conveyances were not intended to interfere with or abridge the

powers of Courts of Equity, to compel the performance of contracts which are binding upon married women. They apply to those cases where the deed or other instrument in writing, is the evidence of the sale or contract a married woman has made, and for her protection require her contract to be executed and proven in a certain way. Where, therefore, a married woman has, prior to her marriage, entered into a contract which is binding upon her, a specific performance may be decreed notwithstanding her subsequent marriage; and if she refuse to execute the deed, a commissioner may be appointed to execute it for her.

So, too, if the statutes, aside from the Act concerning conveyances, authorize her to bind herself by such a contract, that Act creates no difficulty in compelling a specific performance. The only question is, whether the executory contract is binding upon her. If it is valid, the usual consequences must follow, and in case of her refusal to perform it, the other party has the same remedy as in any other case.

The practice of Courts of Equity in regard to equitable estates of married women, throw no light upon this question except by analogy. Here the estate is a legal estate, and the contract, if valid at all, such as will be recognized, and enforced by courts of law.

Sec. 14, Art. XI., of the Constitution of this State, defines what shall constitute the separate property of a married woman, and, as was said in *Selover* v. *American Russian Commercial Co.* (7 Cal. 266), conferred upon her the power to retain it, with such incidents as necessarily attach to such ownership. In that case it is also said that her capacity to hold her property is equal to that of any other individual, and that the same incidents attach to her ownership, and that the Legislature could not impair her rights any more than the rights of her husband. Now, in equity a married woman has generally been treated as *discovert*, so far as effects her power to dispose of or charge her equitable estate. The object of creating the trust for her benefit was that she might have sole control over the trust pro-

perty, and in equity this right was recognized. In *Maclay*
v. *Love, (supra)*, the Court says that the Statute endows the
wife with a capacity to hold the separate property, as fully
at least as she could under principles recognized by Courts
of Equity; that she has the same power to dispose of or to
incumber it, being only restrained as to the manner of ef-
fecting the disposition or incumbrance. In other words,
the Statute as to the manner in which the contracts are exe-
cuted do not restrict her power, but only direct the mode
of its exercise.

Now, the statute having conferred upon a married woman
the capacity to hold property as her separate property, and
to exercise proprietary rights in regard to the same as fully
as any other individual might do, it would naturally follow
that she could do any act essential to its beneficial enjoy-
ment or contributing materially and obviously to its profita-
ble use. The sixth section of the Statute concerning hus-
band and wife, as it stood at the time this contract was en-
tered into, provides, in effect, that she may sell or alienate
any portion of her property by an instrument in writing,
signed by her husband and acknowledged as therein pro-
vided. By strict technical definition this would probably
not include an executory contract; a sale being a contract
by which one party acquires a property in the thing sold
and the other parts with it for a valuable consideration—
that is, it is a transfer of property for an agreed price. But
in ordinary speech, a valid agreement to sell is considered
a sale, and this meaning comports with the Statute, where
the language is found which seems to provide for the man-
ner in which the property is to be managed, controlled and
used, and not for *its* conveyance. This construction har-
monizes also with the statute concerning conveyances. The
object of requiring the contracts of married women to be
executed with certain formalities has been often held to be
for her protection, and not to deprive her of any power
over her estate. The Statute concerning conveyances re-
quires her to execute her conveyance in a certain mode when
the conveyance constitutes the evidence of the sale she has

made, and the Act concerning husband and wife requires the same formalities in any other contract affecting it. The object is to secure to her perfect freedom of action, and to preserve the evidence of that fact, and it matters not in principle whether this free volition is ascertained at the time she makes a valid contract to sell, or actually conveys. In either case her freedom of action is secured at the time when she concludes to part with her property.

The case of *Baker* v. *Hathway*, (5 Allen Mass. 103), is a case similar to this. The Statute there is somewhat more broad than ours. It provides that "a married woman may bargain, sell or convey her separate, real or personal property and enter into any contract in reference to the same." An executory contract to convey was upheld and a specific performance decreed. The reasons given for sustaining the power, apply with equal force to our statute. Judge Dewey says: "This real estate was her sole and separate property, and she was under the Statute authorized to sell and convey the same, having the assent of her husband in writing, or he joining with her in the conveyance. The husband, joining with her in the contract to convey the land, has thereby signified his consent to the same, and this obviates the objection that the wife could not be bound by a contract to sell, because she could not make a written conveyance without the assent of her husband. It is urged on the part of the defendant that the authority given by the Statute to a married woman to 'bargain, sell and convey,' imports nothing more than the right to give a deed of bargain and sale, technically so called. But we think that the whole section taken together, implies more than this, and confers upon the wife the power to make an executory contract for the sale of her lands, in case she has the written assent of her husband, as provided in the Statute. This would seem to be a necessary and useful power to be exercised in many cases as preliminary to an actual conveyance, and, under the same restrictions as to the concurrence of her husband as exist in relation to an actual conveyance, we are of opinion that such contract is a valid one."

In *Bodley* v. *Ferguson* (30 Cal. 511), a similar view is expressed. The Court says: "The Act of April 16, 1850, cencerning conveyances, prescribes a method by which married women can convey their separate property, but it points out none in which their contracts to convey must be made or evidenced. Nor can it be claimed that the method of conveying and that of contracting to convey were intended by the Legislature to be identical; for the thirty-sixth section expressly withdraws executory contracts to convey from its operation."

And again, "That Act (the Act concerning husband and wife), not only prescribes how a married woman shall convey, but dictates a special process, in conformity to which alone she can contract to convey."

This is substantially held, also, as I understand the opinion in *Racouillat* v. *Sansevain*, (32 Cal. 376). There it was held that the executory contract to convey, when so executed by a married woman as to be binding upon her, may be enforced by a decree of specific performance. Nor do I think the case of *Barrett* v. *Tewksberry* (9 Cal. 13), conflicts with these views. There the wife had not made a valid contract to convey, and had never exercised in the mode prescribed her discretion. This act on her part must be attested in the prescribed mode and performed with the necessary formality at the time she becomes bound. The contract, not having been executed in that mode, was not binding, and she still retained the right to exercise her free volition in regard to the sale. Of course she could not be compelled to complete the sale by a decree of the Court.

The contract in this case having been executed in the mode provided by the Statute defining the rights of husband and wife, was valid and binding upon Mrs. Love.

As to the construction of the contract, it seems to me to be reasonably free from doubt. Plaintiff agrees to pay Howard and Perley, as their fee, one tenth of the land. This is precisely equivalent to an agreement to convey to them one tenth of the land as a consideration for their services. The only other plausible construction would be that

it is a present conveyance in payment. The agreement to pay Howard and Perley one tenth of the proceeds of any sales which may have been made is a recognition of a present interest in them, and refutes any presumption that the land was referred to simply as a basis for fixing the fee to be paid.

The next and the most important question in this case is whether the rights of defendant have been lost by lapse of time. Preliminary to this, however, a question has been raised as to whether the defendant is in possession under, or claiming under the contract. It is claimed that as he went into possession as an. intruder, and held as a mere trespasser until he purchased the interest of Howard, in 1862, he has acquired no equities as a vendee in possession. Considered in some respects it does not matter in this case whether the defendant was in possession under the contract or not. If the defendant was in the actual possession, of course the plaintiff acquired no rights against him by adverse possession. If, therefore, she was the. trustee of the defendant, she has acquired no rights in the trust estate by virtue of a possession adverse to her *cestui que trust.* So, too, if the defendant had been sued for the possession during the admitted lifetime of his equity, there is no doubt, I think, that he could have set up his equity as a defense, and could have compelled a conveyance to him of the legal title. So far, therefore, as his rights are to be considered as an estate in land, which can only be barred by an adverse possession, the character of the possession as being under the contract or not is immaterial.

But I think it clear that for all the purposes of this action the defendant must be considered as in possession under the agreement. The cases discussed in the briefs upon this point, are, where possession is claimed as an act of part performance, available to take the case out of the Statute of Frauds. Obviously there is a clear distinction between the cases. If possession has been taken prior to the contract, of course it is not an act in performance of the contract, and may not furnish a reason why it would be con-

sidered inequitable to refuse to enforce it. Here the defendant had an immediate right to a partition and to possession. He was permitted to remain in possession until it was supposed his equity was extinguished, and I think a court of equity will have no difficulty in concluding that he was permitted to remain in possession solely because of his rights under the contract. The plaintiff did not attempt to put him out of possession, for the obvious reason that she was unable to succeed in doing so while his rights were subsisting.

The plain question is then presented for our consideration, whether a vendee in possession under an executory contract, who has fully performed the agreement on his part, but has not obtained a deed, can compel a specific performance after the lapse of four years from the time he might have demanded a deed; and whether, after that time, he can rely upon his equity, under the contract, to defeat an action for the possession on the part of the vendor. If these propositions are answered in the negative, these curious results must follow, that the equitable owner of land is barred of his right, while holding possession according to his right, and without an adverse claim or possession; and a person out of possession acquires title to real estate by the Statute of Limitations against a person in possession holding adversely.

This result is worked out, as I understand it, in this way. It has been held that the vendee in an executory contract to convey may maintain an action for a specific performance without having demanded a deed, and that the Statute of Limitations applies *vigore suo* to equitable as well as to legal causes of action. A cause of action to compel the execution of a deed accrued to Howard and Perley as soon as the contract was executed, so as to be binding, in 1861. The right to enforce this contract then was barred four years from that date, and the defendant's equity was not a live equity at the time this action was commenced. The owner of the equitable title, it is supposed, cannot avail himself of

it as a defense to the legal title unless he is in a position to demand a conveyance of the legal title to him.

I do not question the correctness of these propositions, so far as they affect the rights of the parties arising from the contract relation merely, without reference to the fact of possession. I deny the proposition, however, that a cause of action has accrued within the meaning of the Statute of Limitations, whenever an action may be brought in equity. At law a cause of action accrues whenever there is an injury for which the law has provided a remedy. This is true, also, of a large class of cases arising in equity, principally consisting of those cases where there is concurrent jurisdiction in law and equity. But in many cases in equity this is not true, as, for instance, between tenants in common. They may at any time bring an action for partition; but the fact that five years have elapsed without their having done so would be no bar to their right of action. The same is true, I apprehend, in regard to a right of action to quiet title to real estate, as in *Arrington* v. *Liscom* (34 Cal. 365), the action was sustained because the Statute had run against defendant's title, and of course against the plaintiff's right to maintain the action, if the Statute were applicable to it. Here the party is already in possession of his property, and the action is not to recover it or to obtain redress for an injury.

Upon the execution of a contract to convey, the vendee becomes in equity, the owner of the land. His estate, however, is subject to be defeated if he fails to comply with his agreement. After he has fully performed, he is, in equity, regarded as the absolute owner of an indefeasible estate, and the vendor is a naked trustee, having no interest, but charged with the simple duty to convey to the vendee upon demand. Equity regards the vendee as the owner, upon the principle that it considers that as done which ought to be done. Now, it seems to me that while counsel recognize the fact that he is, in equity, regarded as the owner, they must suppose it to be in some different sense from which he is regarded as owner at law, when he has

the legal title. But this is not so. He is supposed, for the purposes of Courts of Equity, to have acquired, and to hold the title. They will compel the conveyance of the legal title to him, because, at law, his equitable title is not recognized. But wherever it is recognized it constitutes ownership. Now I cannot understand how this estate can be lost by the bar of the statute while the owner is in the actual possession and enjoyment of his estate, according to his right.

In *Bodley* v. *Ferguson (supra)*, the owner of the equitable estate in possession obtained a decree quieting his title against the holder of the legal title. This was the case of an executory contract to convey, where, as in this case, the vendee in possession had paid the full purchase money. This Court says, there was no doubt that the findings supported the equitable defense and entitled the defendant to the relief prayed for. The facts are stated in the opinion as follows: "The findings show a contract to convey on the part of Mrs. Gilroy, to which contract her husband assented; full payment of the purchase money; possession taken by the vendees, and extensive improvements by them."

*Morrison* v. *Wilson* (13 Cal. 498), was a case where a purchase was made by one Ford in his own name for Mrs. Wilson, a married woman. Ford mortgaged the property at her request, after having given her an agreement to convey. This mortgage was held invalid. The Court say: "If the purchase were made by Ford in his own name for the benefit of Mrs. Wilson, Ford would be morally, if not legally, her trustee; and if Ford at or shortly after this time, gave her a writing to convey to her on payment of $300, the two papers may be construed together, if they are shown to be parts of one general transaction. On payment of the purchase money Mrs. Wilson had a perfect equity, which, united with the possession, was equivalent, in our system, for all purposes of this defense to a legal estate."

And again: "She entered, if at all, as purchaser being in possession; this was a notice of the equity. The payment of the purchase money perfected this equity, leaving

nothing but the naked legal title outstanding in Ford, with a right to call it in at any time by Mrs. Wilson."

See, also, the case of *Willis* v. *Wozencraft* (22 Cal. 607), where this question is fully discussed, and numerous authorities cited, holding that the vendor cannot turn the vendee out of possession, if the latter has performed or offers to perform his contract, quoting *Martin* v. *Willink*, (7 S. & R. 297); and *Richardson* v. *Kuhn*, (6 Watts. 299.)

Considering the defendant as the owner of an equitable estate in the land, and the plaintiff as trustee of the naked legal title for him, it is still insisted that defendant's claim is barred by the Statute. That while the Statute of Limitations does not apply to technical, direct and continuing trusts, it does not apply to implied and constructive trusts, and the trust raised in this case is of the last description.

In the case of *Kane* v. *Bloodgood*, (7 Johns. Ch. 91), Chancellor Kent discusses with clearness and perspicuity, remarkable even for that great jurist, the application of the Statute of Limitations to trust estates, and demonstrates both from reason and authority, "that the trusts intended by Courts of Equity not to be reached by the Statute of Limitations, are those technical and continuing trusts which are not at all cognizable at law, but fall within the proper, peculiar and exclusive jurisdiction of this Court." Now, I am not aware of any case in which a Court of Law would enforce a trust—that is, require a specific execution of the trust; but there are very many cases where money or property is received in a fiduciary capacity, and where a remedy for a misapplication of it is afforded either at law or in equity. As in case of money received to be paid to another, or to be applied to a particular purpose, on failure to so apply it the trustee may be sued at law for money had and received, or in equity as a trustee for breach of the trust. (*Scott* v. *Surnam*, Willis R. 404.) So, if a bailiff or guardian receive rents or other moneys belonging to his ward, and the ward neglects to bring either his action of account at law or in equity, he is barred. (*Lockey* v. *Lockey*, Ch. 518; quoted in *Kane* v. *Bloodgood*.) The other cases cited by Chancellor

Kent are of the same character, and merely establish the doctrine that where "a party has a legal right of action, and instead of proceeding at law, resorts to equity, instead of bringing his action of account or detinue, or case for money had and received, files his bill for an account, the same period of time that would bar him at law will bar him in equity."

The trust which arises upon the sale of land, where the purchase money has been paid, is undoubtedly a resulting trust. It is a trust resulting from the nature of the transaction and from the intention of the parties. It is excepted out of the Statute of Frauds, and in cases which admit of doubt, parol evidence is admissible to rebut the presumption that a trust was intended, as in the case where lands are purchased in the name of one, and the purchase money paid by another. Although from the circumstances a trust would be implied, it may be shown that it was intended as a loan or an advance. Like express trust, these trusts arise from a confidence reposed in the trustee, and are in accordance with the intention of the parties. In this respect they differ widely from those constructive trusts, which are established by evidence and forced upon the conscience of the trustee against his will, and generally to prevent the consummation of a fraud. In the latter case the relation of the parties is hostile from the beginning, and the possession of the trustee adverse; and there being no actual confidence reposed in the trustee there can be no pretense, that, according to the intent and contract of the parties, the relation was to be a continuous one. As to the former, the relation being friendly, and a real confidence reposed in the trustee, which may be intended as a continuous one, so long as the relation is recognized and acted upon by the parties, the same reason that induced courts of equity to recognize the trust at all, would compel them to recognize its continued existence. The purpose of the trust may have been that the trustee should continue to hold the title, and the same confidence that led to the trust in the beginning would prevent the beneficiary from compelling a

conveyance of the legal estate to him. The only respect in which this trust differs from an express trust is as to the mode in which it is established or proven. That is to say, there is no declaration or agreement by which the terms are stated upon which the trustee is to hold the trust property. When established, however, they are recognized and enforced precisely as express trusts are enforced—the only difference being, that perhaps a different presumption might arise from the possession of the trustee.

This principle is clearly stated in Tiffany and Bullard upon Trust and Trustees (page 19), where it is said: "The trust, though implied from the evidence, is in reality an express trust, and will be treated as such by the Court. That is, implied trusts are considered as really the expression of the donor or grantor as those which are denominated express trusts; the difference is only in the form of language by which the trust is expressed. They derive their authority from the will of the donor, grantor, etc., as gathered from his actions or expressions.

The able attorneys who have filed briefs in this case, and in two other cases in which the same questions have been discussed, have, I think, been somewhat misled by the question propounded by this Court. They have really discussed the question, under what circumstances the possession of the trustee will bar the *cestui que trust*. Evidently no such question is involved here. And I have never yet met with a case, whatever the character of the trust, where the statute has been held to bar the rights of the beneficiary in favor of the trustee, when the beneficiary has continued in possession according to his right and no adverse claim made by the trustee. Such a case would be at variance with the fundamental idea of statutes of limitation that possession draws to it, or rather extinguishes all adverse claims and titles. And the same is true where the trustee is in possession, if the relation is acknowledged. Thus in *Hovenden* v. *Lord Annesley,* (2 Sch. & Lef. 607), Lord Redesdale said: "The possession of the trustee is that of the *cestui que trust*, and if the only circumstance is that he does not perform

his trust, his possession operates nothing as a bar, because his possession is according to his title."

And again: "But the question of fraud is of a different description; that is, a case where a person who is in possession by virtue of that fraud is not, in the ordinary sense of the word, trustee, but is to be constituted a trustee by a decree of a Court of equity, founded upon fraud, and his possession in the meantime is adverse to the person who impeaches the transaction on the ground of fraud, and the decisions seem to be in conformity to that idea."

This case shows also the application of the statute as to all trusts which exist according to the intention of the parties, and that question always is, whether the trustee holds adversely. This is taken for granted also by Chancellor Kent in *Kane* v. *Bloodgood*; for many of the cases commented upon by him are explained upon the ground that the trust was recognized or acted upon by the parties, and so the statute prevented from running. So, too, in the case of *Bartlett* v. *Judd* (23 Barb. 263), which was an action to reform a deed—the vendee having been in possession, and more than ten years having elapsed; the Court held that he was not barred, notwithstanding the provision of the statute that "bills for relief shall be filed within ten years after the cause of action accured, and not after." It was held that when the equitable owner of land is in possession, and is afterwards evicted by the owner of the legal title, his cause of action to establish his equitable right does not arise until after eviction. Such was also the opinion of the Chancellor in *Varick* v. *Edwards* (11 Paig. 290). In *Harris* v. *King* (16 Ark. 122), the Court went much further, and held that if the vendor, having received the full purchase money, executes a bond to convey, and then remains in possession, he will be presumed to hold as trustee or agent, and the statute does not run in his favor against the vendee. This is held upon the doctrine of trusts, it being held that an equitable title to real estate can be lost only in the same manner as a legal title—by adverse possession. The same doctrine is held in *Scarlett* v. *Hunter* (3 Jones' Eq. [N. C.] 84); see

also, *Boone* v. *Chiles,* 10 Peters, 177; *Ahl* v. *Johnson,* 20
Howard [U. S.], 511; *Barlow* v. *Whitelock,* 4 Munroe, 180;
*Crafton* v. *Ormsby,* 2 Sch. & Lef. 603; *Burke* v. *Length,* 3
Jon. & L. 193; *Longworth* v. *Taylor,* 1 McLean, 395; *Miller*
v. *Bear,* 3 Paige, 466; *Waters* v. *Travers,* 9 Johns. 450; The
*New Barbadoes Toll Bridge Co.* v. *Vreeland,* 3 Green. Ch. [N.
J.,] 157. In *Coulson* v. *Walton* (9 Peters, 62), a special
performance was decreed forty-four years after an action
might have been brought for that purpose by the vendee.
It was held that the statute would be good in all cases in
equity by analogy, when at law it would have been held
good under similar circumstances; that a legal title could
only be barred by adverse possession, and therefore an
equitable title could only be barred in the same way.

The conveyance from the trustee to the *cestui que trust* in
such cases is but the execution of the trust; the right to
obtain the legal title is but an incident to the estate of the
*cestui que trust.* So long, therefore, as the estate exists, so
long will the right to acquire the legal title subsist. It is
like the right of a tenant in common to compel a partition,
and is not a cause of action which accrues in the sense of
the Statute of Limitations, and which may be lost by the
lapse of time. The trustee and *cestui que trust* have the
same title, and do not hold adversely so long as the rights
of neither are denied. If A purchase land with his own
money, but for proper reasons the deed is taken in the name
of B, with his consent, and A goes into possession and con-
tinues to use the property as his own, this would be an
implied trust; but no one would think the Statute of Limita-
tions would deprive A of his estate for a failure to obtain
the legal title within four years. He is guilty of no laches
in asserting his rights. His possession is the most effec-
tive assertion of them.

In Texas this question has been considerably discussed,
and the decisions are in accordance with this opinion. The
trust created is held to be a continuing trust; that the ven-
dee is clothed with the equitable title, and that the statute
does not run against his right to enforce a specific perform-

ance so long as he remains in possession with the acquiescence of the vendor. (*Hemming* v. *Zimmerschitte,* 4 Tex. 159; *Mitchells* v. *Shepperd,* 13 Id. 484; *Holman* v. *Criswell,* 15 Id. 394; *Vardeman* v. *Lawson,* 17 Id. 10; *Neuson* v. *Davis,* 20 Id. 419).

My conclusion is that the defendant established a valid defence to the action and was entitled to the judgment for specific performance of the contract set out and proven.

The judgment must, therefore, be reversed and judgment entered for the defendant upon the findings in accordance with this opinion.

Ordered that the judgment be entered as of the 5th of January, 1868.

Judgment reversed and cause remanded, with directions to enter judgment for defendant in accordance with this opinion.